**STANDARD ELECTRIC CO., Inc.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 24412.

United States Court of Appeals
Fifth Circuit.

Jan. 4, 1968.

Theo F. Weiss, San Antonio, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Gregory L. Hell-rung, Atty., N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate Gen. Counsel, Gary Green, Wayne S. Bishop, Attorneys, N. L. R. B., for respondent.

Before TUTTLE and GEWIN, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge:

The International Union of Electrical, Radio & Machine Workers, AFL–CIO filed charges against Standard Electric Company (respondent), a Texas corporation engaged in the manufacture and wholesale of batteries, battery separators, fibre glass insulation material, and related products, alleging that respondent had interfered with, restrained and coerced its employees in violation of § 8(a) (1) and had unlawfully discharged several employees in violation of § 8(a) (3) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1) and (3). A hearing was held by the Trial Examiner beginning August 10, 1965. During a recess in the second day of the hearing, respondent told a union representative that six employee witnesses who had been subpoenaed would not be needed for work the remainder of the week. At the resumption of the hearing on the following day the Trial Examiner allowed the complaint to be amended to include an allegation that the foregoing action was violative of § 8(a) (4) and (1) of the Act. 29 U.S.C. § 158(a) (4).

After the hearing was completed the Examiner made numerous findings of fact involving each of the alleged violations and concluded that the record did

not contain a preponderance of credible evidence to support findings of unfair labor practices. The Examiner recommended that the Board enter an order dismissing the complaint. Both General Counsel and the Union filed numerous exceptions to the Trial Examiner's decision.

On review the Board found that respondent had violated § 8(a) (1) by coercively interrogating employees concerning their union affiliation and activity, by threatening employees with reprisals in the event of unionization, and by promising benefits for resisting unionization. Also, the Board concluded that respondent had engaged in discrimination to discourage membership in the union by the discharge of one employee, Ramiro Sandoval, and thereby had violated § 8(a) (3). Further, the Board found that the suspension of the six employees subpoenaed as witnesses at the hearing, from their regular work was an act of discrimination proscribed by § 8(a) (4). Thereupon the Board ordered respondent to cease and desist from its unlawful practices, to reinstate Sandoval to his former or a substantially equivalent position with back pay, and to make the six suspended employees whole for any loss of wages they may have suffered. Although the record is not specifically clear as to the amount of wages lost by the six employees mentioned, such loss appears to be rather minimal.

■ Pursuant to the provisions of § 10(f) of the Act, 29 U.S.C. § 160(f), respondent petitions this court for review of the Board's order. The Board cross-petitions for enforcement of its order. We enforce the Board's order as it relates to the § 8(a) (1) and (3) violations but deny enforcement as to that portion of the order pertaining to the § 8(a) (4) violation.

■ We have carefully reviewed the transcript of proceedings in this case and find that substantial evidence on the record as a whole supports the Board's findings that respondent violated § 8(a) (1) and (3) of the Act. We have taken into account the fact that the Trial Examiner and the Board drew contrary inferences from the facts and differed in certain credibility resolutions. However, we are still bound by the substantial evidence rule. In N. L. R. B. v. Akin Products Co., 209 F.2d 109 (5 Cir. 1953) we stated at page 111:

> " * * * the final obligation to determine the facts as to matters at issue here rests with [the Board], and * * * in all cases where examiner and board differ, if the board's findings are supported by evidence on the record considered as a whole they should be sustained by us."

See also Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 95 L.Ed. 456; N. L. R. B. v. Camco, Inc., 340 F.2d 803, 808–809.

■ Respondent contends that the Board erred in finding and concluding that it violated § 8(a) (4) by denying work to the six subpoenaed employees.[1] We agree.

The record reflects that these six employees worked in the Spinning Department where 24 spinning drums were operated. The Spinning Department has a total of 12 spinners who work on three shifts of 8 hours each with 4 spinners on each shift. Each spinner works three drums during his shift. The last day of a spinner's work week is Thursday. Oth-

---

1. Respondent further contends that the Trial Examiner erred in allowing the complaint to be amended to include this § 8(a) (4) violation on the grounds that (1) no complete, adequate or fair and impartial investigation had been made of the charges, (2) respondent was entitled to a full investigation, issuance of a complaint, opportunity to answer, and notice of a hearing, (3) such amendment was untimely since General Counsel had closed its case, (4) it put an undue hardship on respondent since it had to defend additional charges, and (5) allowing the amendment violated the requirements of due process and respondent's statutory and constitutional rights. We find it unnecessary to decide this question in view of our holding that respondent did not commit a § 8(a) (4) violation.

er employees from this department were also subpoenaed.

On Monday, the day before the hearing was to begin, Gerald Dubinski, Secretary-Treasurer of respondent, was informed that a number of employees in the Spinning Department including six spinners had been subpoenaed to testify at the hearing. Thinking that the hearing would last only one day the spinning operations were not rescheduled. By Tuesday afternoon none of the spinning employees had testified and it appeared that they were not going to be able to return to work on Wednesday. Respondent could not continue to operate 24 drums with the diminished work force, so in order to maintain the 8 hour shifts, six drums were put out of operation late Tuesday afternoon.

Wednesday morning the union representative was told that the subpoenaed employees would not be needed until their regularly scheduled work shift on Sunday. At the noon recess, one employee asked Dubinski about the new work schedule and Dubinski explained that he had to shut down six machines because of a lack of spinners. Dubinski further testified that some employee or employees made slurring remarks and in reply he stated: "Well it's not my fault that we are down here, I didn't file complaints. It is you and your people who have filed the complaints." Subsequently respondent arranged to have substitute jobs available for the six employees on Friday to make up for their loss of work on Thursday.[2]

Gerald Dubinski, in answer to the question of why the six drums were not refired for Thursday, explained that it was not feasible to fire the spinning drums for one day's work. It not only takes a substantial time to get the drums into operation once they are fired, but the furnaces suffer a thermoshock. Every time the furnace is fired, some damage results because of the wear on the ceramic structure, which expands every time it is heated.

The Board concluded from the above that the respondent had discriminated against the six employees because they had given or were about to give testimony. We find such conclusion unsupported. First, respondent made every effort to keep the Spinning Department operating as usual even to the extent that some spinners worked for 24 continuous hours. When it became impossible to keep all the drums operating, respondent naturally had to suspend operation of some of them. The record clearly shows that respondent refused to refire these drums for one day for valid economic reasons. Further, respondent provided substitute work for the employees. While it may be that respondent could have rearranged the work schedule by assigning the six spinners to a shift which did not conflict with the hours of the hearing, thereby keeping all the drums in operation and all the employees working, it is not for us to decide how respondent should operate its plant. Our only concern is whether the method it chose was unlawfully motivated. We find from the evidence on the record as a whole that it was not. Even though the statement made by respondent to the employee-witnesses, quoted earlier, was construed by the Board as an indication that respondent's rescheduling of work was done in retaliation because the spinners were present at the hearing to testify, such statement does not constitute substantial evidence which will support such a construction in our opinion when the record is reviewed in its entirety. Therefore, the Board's finding that respondent was guilty of an § 8(a) (4) violation, being unsupported by substantial evidence, is erroneous.

Enforced in part and enforcement denied in part.

---

2. One employee testified that he could not remember whether respondent had jobs for all of the six or only three. Nevertheless, at least two employees volunteered to work on Friday. However, one employee was unable to accept the offered work because of a prior military commitment.