**HEIGHTS FUNERAL HOME, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 24023.

United States Court of Appeals
Fifth Circuit.

Nov. 22, 1967.

E. H. Thornton, Jr., Dyche, Wheat,
Thornton & Wright, Houston, Tex., for
petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Charles N. Steele, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Allison W. Brown, Jr., Edith Nash, Attys., N.L.R.B., for respondent.

Before BELL, COLEMAN and GODBOLD, Circuit Judges.

COLEMAN, Circuit Judge:

■ This case is before the Court on the petition of Heights Funeral Home, Inc. for review of an order of the National Labor Relations Board, issued June 20, 1966, finding that the Company violated § 8(a) (1) of the National Labor Relations Act, as amended, by illegally interrogating employees, threatening them with discharge, giving the impression of surveillance, soliciting employees to withdraw from the Union, and by granting employee benefits. The Board cross petitions for enforcement. The decision and order of the Board have been reported and may be found in 159 N.L.R.B. No. 69. Upon a thorough examination of the record we are convinced, without any necessity for prolonged discussion, that the Board findings as to these § 8(a) (1) violations are supported by substantial evidence in the record as a whole and that in these respects the order must be enforced.

■ In the same proceedings, reported as above, the Board further found that the Company violated § 8(a) (3) and (1) by discharging an employee by the name of Jackson J. Matthews because of his activities on behalf of the Union. The disposition of this portion of the case justifies more elaborate discussion.

The Petitioner and its affiliates own and operate three funeral homes in Houston, Texas. It had 44 employees. In June, 1965, the Union filed its representation petition covering non-supervisory employees of the Heights Funeral Home. The representation hearing began on July 16th and was recessed to August 4th. On that date the Union stipulated that Matthews was a supervisor. On August 6th there was another recess to August 11th. Matthews was discharged the next day. As might have been anticipated, this "put the fat in the fire". On August 9th Matthews filed an unlawful discharge complaint with the Regional Director. When the representation hearings were reconvened on August 11th Matthews' supervisory status became an issue, despite the prior stipulation. The Regional Director held that Matthews, in fact, had not been a supervisor. The Board affirmed this holding and there was no petition for review. In the election held on December 1st the Union lost, 30 to 1, with Matthews not voting.

On January 31, 1966, the hearing began on Matthews' complaint that he had been unlawfully discharged. The employer vigorously sought to relitigate the supervisory status of Matthews and offered evidence in support of its contentions. The Trial Examiner, on the ground that the issue had already been litigated in a related proceeding, refused to permit relitigation, Board Rule 102.-67(f).[1]

Nevertheless, the Trial Examiner recommended that the complaint be dismissed in so far as it alleged a violation of § 8(a) (3). He regarded the reasons given by petitioner for Matthews' discharge as pretextual but concluded that the evidence was insufficient to establish that the termination was unlawfully

1. Section 102.67(f)—
  "The parties may, at any time, waive their right to request review. Failure to request review shall preclude such parties from relitigating, in any related subsequent unfair labor practice proceeding, any issue which was, or could have been, raised in the representation proceeding. Denial of a request for review shall constitute an affirmance of the regional director's action which shall also preclude relitigating any such issues in any related subsequent unfair labor practice proceeding. [29 C.F.R. 133 (1966)]."

motivated. The Board disagreed with this conclusion as follows:

"The record reveals that Matthews commenced participation in the organizing campaign on July 6, about 1 month before his discharge, and thereafter, while at work, talked to fellow employees about the Union in person or by telephone about every other day. About July 15, 1965, Respondent's agent, Barber, posing as an insurance counselor making a survey of the employees' sentiments with respect to hospitalization and insurance benefits, questioned Matthews as to whether the Respondent 'ought to have an organization' or 'a guild'. In the ensuing discussion, Matthews indicated his dissatisfaction with employment conditions. Soon thereafter, Respondent's President, Waltrip, revealed his awareness of Matthews' union sympathies when he called Matthews into his office and pointed out that he knew more about the Union than any of the employees thought. Waltrip then threatened to discharge Matthews, and said he would discharge all his employees before Respondent would ever sign a contract with the Union. On August 7, 1965, less than 2 weeks after this discussion with Waltrip, Matthews' employment was terminated under circumstances fully discussed in the Trial Examiner's Decision. In light of Respondent's union animus, demonstrated by its numerous other unfair labor practices, its unlawful interrogation and intimidation of Matthews, and the timing of the discharge, we are convinced that Respondent either knew of Matthews' organizing activity or believed that he favored unionization. In an attempt to conceal the fact that Matthews' discharge was motivated by such anti-union considerations, Respondent offered clearly pretextual reasons. Accordingly, we conclude that Respondent discriminatorily discharged employee Jackson J. Matthews in violation of Section 8(a) (3) and (1) of the Act."

We hold that there was ample evidence in the record to support this conclusion of the Board, *if Matthews was not a supervisor.*

This leaves for decision the matter of whether the petitioner was entitled to relitigate the supervisory issue.

In view of Amalgamated Clothing Workers of America v. N.L.R.B., June 27, 1966, 124 U.S.App.D.C. 365, 365 F.2d 898, petitioner says that it had an absolute right to relitigate.

██ In *Amalgamated* the District of Columbia Circuit compiled a splendidly clear, comprehensive history and analysis of Rule 102.67(f), concluding:

"[1, 2] In our opinion, the Board's rule against relitigation 'in a subsequent unfair labor practice proceeding' does not give an employer sufficient notice that his failure to pursue all of his remedies in the representation proceeding means he will be disabled, regardless of the context of the subsequent proceeding, from challenging each and every issue 'which was, or could have been, raised in the representation proceeding.' A more natural reading of the rule, in the absence of express provision to the contrary, is one which precludes relitigation only in a 'related' subsequent unfair labor practice proceeding, construed in accordance with the doctrine announced in Niederriter a few months prior to the new regulation. Where a company is charged with refusal to bargain with a union certified after election, the proceeding is sufficiently 'related' to the representation proceeding to preclude relitigation of such common issues as the scope of the appropriate unit and employees therein. Where, however, as in this case, the part of the charge involved in the relitigation issue is not refusal to bargain, but rather interference with rights of organization, the proceedings are not so related as to foreclose presentation to the Board of the underlying issues.

(f) of the Board's rules, which estop relitigation in a related pro-

ceeding, is in accordance with the long-held objective of avoiding undue and unnecessary delay in representation elections. There will be cases where an employer will be as interested as the Board in holding a speedy election and will be willing to forego the presence of a given employee in the unit or his vote in the tally. We see no basis for assuming that the Board wishes to require such an employer to delay the election while he completely litigates subsidiary questions, such as supervisory status, in an effort to protect his rights in the future on matters other than the determination of the unit and eligible voters therein.

■ In the interest of clarity we may note that the Trial Examiner and the Board need not allow the Company to relitigate the issue completely. The evidence at the earlier hearing need not be reheard but could, as it was in this case, be incorporated into the record, upon being specifically identified. The findings of the Regional Director may be accorded 'persuasive relevance,' a kind of administrative comity, aiding the Examiner and the Board in reaching just decisions, subject however to power of reconsideration both on the record already made and in the light of any additional evidence that the Examiner finds material and helpful to a proper resolution of the issue.

We remand the question of the supervisory status of the floorladies to the Board for further consideration in accordance with our decision and we will delay any review of the nature of the activities of the floorladies until the question of their status has been determined by the Board."

In Thrifty Supply Company, 153 NLRB 370, decided June 24, 1965 (before the representative hearings were begun

in the case *sub judice*) the Board had held, by approving a Trial Examiner's Decision, that the Rule "does not on its face purport to limit relitigation to refusal-to-bargain proceedings and the logic of such a limitation is not readily apparent". The Board now says that this Decision constituted notice to petitioner and that he was bound by it.

On the other hand, the Court in *Amalgamated*, supra, had considered *Thrifty Supply Company* [Footnote 12, 365 F.2d at 904]. It pointed out holdings by other Trial Examiners, likewise approved by the Board, to the effect that such findings in a representation hearing should be accorded no more than "persuasive relevance" [Footnote 13, 365 F.2d 904]. One of these "persuasive relevance" cases, National Freight, Inc., 154 NLRB 621, was decided on August 20, 1965, while Height's representation hearing was in progress.

Thus, in our opinion, we cannot hold that *Thrifty-Supply*, supra, cured the defect condemned in Amalgamated Clothing Workers of America v. N.L.R.B., supra.

■ Petitioner, consistently with what we have said herein, must be given an opportunity to relitigate the supervisory status of Jackson J. Matthews in the manner prescribed by, and subject to the limitations set out in, the *Amalgamated* case. When such a hearing shall have been held and the supervisory status of Matthews determined pursuant thereto, the further action of the Board will necessarily follow, consistently therewith.

In all other respects, as hereinabove set out, the Order of the Board will be Enforced.

Enforced in part, and in part remanded for further hearing as to Jackson J. Matthews.