**ELECTRA MANUFACTURING CO.,**
**Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent.**

**No. 25638.**

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1969.

Conrad Meyer, III, New Orleans, La., Kent E. Whittaker, Oscar S. Brewer, Kansas City, Mo., for petitioner; Brewer & Myers, Kansas City, Mo., Baldwin, Haspel, Maloney, Rainold & Meyer, New Orleans, La., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel,

Dominick L. Manoli, Associate Gen. Counsel, Robertamarie Kiley, Elliott Moore, Attys., N.L.R.B., Washington, D. C., for respondent.

Before GOLDBERG and AINSWORTH, Circuit Judges, and SPEARS, District Judge.

SPEARS, District Judge:

This is a petition by Electra Manufacturing Co., for review of a decision of the National Labor Relations Board which held that the Company had violated sections 8(a) (1) and (5) and sections 2(6) and (7) of the National Labor Relations Act, for refusal to recognize or bargain with the Union. The order of the Board requires the Company to cease and desist from unfair labor practices, to bargain with the International Union of Electrical, Radio and Machine Workers, AFL-CIO, and to post appropriate notices.

The Company, a Missouri corporation, is engaged in the manufacture, sale and distribution of electronic resistors, and is authorized to do business in the State of Texas. On August 31, 1966, the Union filed a petition with the Board, asking that an election be held among certain employees at the Electra plant in Mineral Wells, Texas, for the purpose of determining whether those employees desired to be represented by the Union for purposes of collective bargaining. On September 28, 1966, Electra and the Union entered into a stipulation pursuant to which an election was held on October 20 and 21, 1966.

Electra filed with the Regional Director timely objections to the election, urging that it was rendered invalid by reason of unfair conduct on the part of the Union. The Regional Director conducted an ex parte investigation (See 29 C. F.R. § 102.69(c)) and recommended that the Company's objections be overruled and that the Union be certified. The Board agreed with the Regional Director, and on April 20, 1967 the Union was certified as exclusive bargaining representative.

Thereafter, the Company refused to bargain with the Union, and the Union filed an unfair labor practice charge. After the complaint was issued, General Counsel for the Board filed a motion for judgment on the pleadings contending that no triable issues were raised. The Company's response again asserted the invalidity of the Union certification, and submitted certain offers of proof. The trial examiner granted the General Counsel's motion, concluding that "absent newly discovered or previously unavailable evidence or special circumstances, the Board's disposition of the representation matters is the law of the case".[1] The Board adopted the trial examiner's decision and recommended order, finding Electra in violation of the National Labor Relations Act. The order requires the Company to cease and desist from the unfair labor practices found, to bargain with the Union upon request, and to post appropriate notices. It is from this order that the Company appeals. We hold that the Board's order must be set aside and the Company's petition for denial of enforcement granted.

The Company argues that the pre-election conduct and tactics of the Union rendered the election unfair and interfered with the free choice of the employees. It is undisputed that a handbill, captioned "Day of Decision", was distributed by the Union both during the election and over a period of twenty-four (24) hours prior thereto. Upon consideration of the contents of the handbill, the Regional Director concluded that abbreviated references to alleged

[1]. Though disagreeing with the Board's action in this case, Electra makes no issue of the fact that judgment was granted against it on the pleadings. In this respect the case differs from our recent holding in NLRB v. Smith Industries, 5 Cir., 1969, 403 F.2d 889 (5 Cir. 1969) and N L R B v. Genesco, 5 Cir. 1969, 406 F.2d 393 (5 Cir. 1969) in which we held summary judgment to be improper where there were substantial and material factual issues which could properly be resolved only by a hearing before the board.

employee benefits failed to comport exactly with the correct facts concerning such benefits, but concluded that such misstatements were not sufficient to render the election invalid because their impact on the election was insubstantial. The discrepancies pertained to such matters as holidays, seniority system, overtime, job security, jury duty pay, leaves of absence, company paid insurance and hospitalization, and sick leave. His conclusion was premised on the fact that "prevailing employee benefits are set forth in a bulletin published by the employer and brought to the attention of all employees upon interview at hire and by posting on all employee bulletin boards", and further that "the employer did issue campaign letters contradicting some of the Union's claims".

■■■ While a representation proceeding alone would not be subject to direct review by this Court, where an unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceeding is properly here. Under those circumstances, the representation case and the unfair labor practice case become one, and the complete record is fully reviewable. NLRB v. Tampa Crown Distributors, Inc., 272 F. 2d 470 (5 Cir. 1959). See also: NLRB v. Genesco, 406 F.2d 393 (5 Cir. 1969). In order to arrive at a decision in this matter, we must consider the record to determine whether the Board's certification of the Union, and consequent finding of an unfair labor practice by petitioner, were based on facts supported by substantial evidence and on the application of correct legal standards. Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Board, in Hollywood Ceramics Company, Inc., 140 NLRB 36 (1962), formulated and announced the test to be applied in determining whether campaign literature containing misrepresentations could serve as a basis for invalidating an election. There the Board held that in order to set aside an election there must be a misrepresentation of a material fact which is a substantial departure from the truth, which is so timed as to prevent the other side from making an effective rebuttal, and may reasonably be expected to have a significant impact on the election. This Court set its own standard in the case of Anchor Manufacturing Company v. NLRB, 300 F.2d 301, at 303 (5 Cir. 1962), where it is stated that the true rule is not "that *when* false statements are made they constitute an interference with free choice, but that when false statements are made *which* constitute an interference with free choice, for or against a bargaining representative, an election should be set aside".

The facts in this case indicate that of approximately 300 eligible voters, about 175 had worked for the Company for less than 90 days. Most of these 175 employees were "probationary employees" and as such, were not entitled to the receipt of certain employee benefits provided by the Company. A total number of 284 ballots were cast; of this number, 168 were cast for the Union and 116 against.

The record in this case includes approximately forty-six (46) pages devoted to an explanation of the hospitalization and insurance coverage available to the employees of the Company. An additional eleven (11) pages contain various statements of Company policy and procedure. To say that the employees knew, at the time they voted, of all the Company benefits because of the fact that "prevailing employee benefits are set forth in a bulletin published by the employer and brought to the attention of all employees upon interview at hire and by posting on all employee bulletin boards", is to assume that they had theretofore made a detailed study of all of the provisions which were contained in these fifty-seven (57) pages which we have examined. While it may be conceded that some of the employees who had been with the Company for several years might have been relatively familiar with the general policies and procedures of

the Company, it does not follow that the entire group of eligible voters who did in fact cast a ballot, were equally well acquainted with the facts attendant upon the matter.

It further appears that the distribution of the handbills occurred at a time when the Company was prevented from making an effective rebuttal. The campaign literature was distributed both during the election and over a period of twenty-four (24) hours prior thereto. Although it is conceded that the Company bulletin boards displayed policy notices, it appears that such bulletin boards were located in the cafeteria area; since the voting booth was also located there, that room was off-limits to employees, for other than voting purposes, during the entire day of the election; consequently, the employees would not have had an opportunity to compare the handbill with the posted policy statements. As to the Regional Director's statement that "the Employer did issue campaign letters contradicting some of the Union's claims", it need only be observed that these letters failed to comment upon most of the policies which the Union later misrepresented.

There is no doubt that the facts which the Union misrepresented in its handbill were "material". The Union stated that the Company had five holidays (actually the Company had six); the Union said that the employees had no job security (in fact, the rules of the Company permit discharge only for good cause); the Union said there was no seniority (it appears that lay off, recall, length of vacation, job transfer and other rights are determined by seniority policies); the Union said there was no jury duty pay (it is the Company's policy to make up the difference between jury pay and the employee's regular wage); the Union said it would negotiate for an illness benefits policy granting two-thirds of weekly pay for 26 weeks and stated that the Company provided no such benefits (this distorts the picture because the Company's policy provides two-thirds of weekly pay for *52* weeks); the Union

stated that the Company paid overtime *only* as required by law (most of the employees were not likely to be in a position to know what the minimum wage requirement is; furthermore, the Company paid its employees time and one-half for work in excess of eight (8) hours in one day, or forty (40) hours in one week; double time for Sundays, and two and one-half times ordinary pay for work on holidays); the Union said there was no guaranteed leave of absence (there is a guaranteed leave of absence for four (4) weeks for non-medical reasons, and twelve (12) weeks for medical reasons); and finally, the Union stated that the Company insurance and hospitalization plans were completely inadequate (it appears that the Company has standard group insurance protection).

In NLRB v. Bonnie Enterprises, Inc., 341 F.2d 712 at 714 (4 Cir. 1965), the Court set aside an election because of Union misrepresentation of facts contained in campaign literature. There the literature contained misrepresentations as to group life insurance, sick pay, vacations and coffee breaks. It was distributed on the day prior to the election and on election day. The Court said: "It is clear that the promises contained in the circular went far beyond the bounds of permissible hyperbole sometimes indulged in during pre-election campaigns for public office. There were substantial misrepresentations of material facts of vital concern to employees voting in the election. In fact, it is difficult to conceive of more important misrepresentations. Furthermore, the timing of the publication afforded no opportunity for the interested parties to either verify the claims or to determine their untruthfulness".

In the instant case, as we have observed, there was no opportunity for the Company to reply to the Union's misstatements, and in light of the fact that the subjects of misrepresentation were matters of vital importance to the employees, this Court can only conclude that the Union's action was timed so as to prevent the Company from making an

effective rebuttal, and was reasonably calculated to have a significant impact on the election and to prevent the employees from registering their free and untrammeled choice as to a bargaining representative. NLRB v. Trinity Steel Co., 214 F.2d 120, at 123 (5 Cir. 1954).

As stated by this Court in NLRB v. Houston Chronicle Publishing Company, 300 F.2d 273 at 278 (5 Cir. 1962): "In election proceedings, it is the function of the Board to provide 'a laboratory' in which an experiment to determine the uninhibited desires of the employees may be conducted under conditions as nearly ideal as possible. When and if the standards of election campaigning drop too low, the requisite laboratory conditions are not present, and the experiment must be conducted over again. General Shoe Corporation, 77 NLRB No. 18, 21 LRRM 1337, 1341 (1948)".

The petitioner has established a prima facie case of unfairness in the conduct of this election, and on the record taken as a whole there is not substantial evidence in support of a contrary conclusion. It is therefore ordered that the Board's order be set aside and that the Company's petition for denial of enforcement be granted.