**ROSS PORTA–PLANT, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 24979.**

United States Court of Appeals
Fifth Circuit.

Dec. 16, 1968.

Rehearing and Rehearing En Banc
Denied March 24, 1969.

Hugh M. Smith, Allen P. Schoolfield, Jr., Dallas, Tex., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, N. L. R. B., Robert A. Giannasi, Washington, D. C., for respondent.

Before GEWIN, PHILLIPS * and GOLDBERG, Circuit Judges.

PHILLIPS, Circuit Judge:

This case is before the Court on the petition of Ross Porta-Plant, Inc., to review and set aside an order of the National Labor Relations Board. The Board cross-petitions for enforcement of its order. Reference is made to the Board's decision and order, reported at 166 N.L. R.B. No. 40, for a detailed statement of the facts.

Petitioner, a Texas corporation, with its principal office and place of business in Brownwood, Texas, manufactures and fabricates custom made portable cement

4. Federal Rules of Appellate Procedure 38 and Advisory Committee's Note, 43 F.R.D. 61, 155.

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

and concrete plants. Its business is affected by the seasonal fluctuations of the construction industry. During 1965 it employed from 56 to 115 men, most of whom were welders.

The Union involved is Local 826, International Union of Operating Engineers, AFL–CIO.

About May 20, 1965, a movement was begun to unionize the plant. On August 4, 1965, the Union won a Board supervised election in which forty-five votes were cast for the Union, thirty-two against the Union, and five additional votes were challenged but unopened. On October 15, 1965, the Regional Director certified the Union as bargaining representative. Ross has refused to recognize the Union or to bargain with it on the ground that the election was improperly conducted and that certain department heads or crew leaders were supervisors within the meaning of § 2(11) of the Act and therefore it was improper to include them in the appropriate unit. The company did not challenge the votes of any department heads or crew leaders who may have voted in the election.

In the present proceeding the Board issued a bargaining order, holding that the company violated § 8(a) (5) of the Act by refusing to bargain with the Union. It also ordered reinstatement with backpay of eleven employees found to have been discriminatorily discharged in violation of § 8(a) (3) of the Act, including seven crew leaders who the company contends were department heads and supervisors. The Board further found that the Company violated § 8(a) (1) of the Act by various threats and acts of coercion and issued the usual cease and desist order.

The primary question presented to this Court is whether there is substantial evidence on the record considered as a whole to support the Board's findings that crew leaders were not supervisors. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

The company contends that supervisors were permitted to vote in violation of the Act and that the election is invalid. It further contends that it had a right to discharge the seven supervisors because of their activities in support of the Union, and that the Board's order requiring reinstatement of these supervisors should be set aside and not enforced.

The assertion that crew leaders were "department heads" and supervisors was first made by the Company at a representation hearing before the Regional Director following the filing by the Union of a petition for an election. Nine witnesses testified at this hearing as to the duties of the crew leaders. The Regional Director determined from the testimony that the crew leaders were employees under § 2(3) of the Act and were not supervisors. The Regional Director included the crew leaders in the appropriate unit and granted them the right to vote in the election. On August 4, 1965, the day of the election, the Board sent a telegram granting the company's request for review and staying the election, but the election was held and completed, as scheduled, prior to receipt of the telegram. On October 6, 1965, the Board completed its review of the matter on the merits and affirmed the Regional Director in an unpublished decision.

After the company had ignored four written demands of the Union to bargain collectively and furnish certain necessary information, a consolidated complaint was issued alleging violations of § 8(a) (1), (3) and (5).

The Trial Examiner admitted testimony as to the duties of crew leaders and found them to be supervisors, contrary to the previous ruling of the Regional Director as affirmed by the Board. He recommended an order requiring reinstatement of four employees with backpay but found that the discharge of the seven crew leaders did not constitute a violation of § 8(a) (3). With respect to the refusal of the company to bargain, the Trial Examiner found that he could not look behind the Board's certification of the Union and therefore held that the company had violated § 8(a) (5) and (1) by refusing to bargain and to provide the Union with certain requested information about the employees in the unit.

By exceptions filed before the Board the General Counsel contended that relitigation of the issue of the supervisory status of the crew leaders should not have been permitted in the present proceeding. The Board declined to rule on this question, holding that the record evidence establishes that the crew leaders or departmental heads are employees and not supervisors.

The record shows that after the Union commenced its organizational activities and after the Company discovered that some of the crew leaders were taking part in these activities, the company's attorney was instructed to speak to the crew leaders. The attorney drew a line on the blackboard and stated that there was a very narrow distinction between leadmen and supervisors. He informed them that they were supervisors and that they had the authority and responsibility to exercise specifically outlined supervisory functions. After the meeting the company posted a notice on the bulletin board listing the crew leaders as supervisors and the names of employees under them.

Under the standards applied by this Court in N. L. R. B. v. Security Guard Service, Inc., 5th Cir. 1967, 384 F.2d 143, we hold that there is substantial evidence on the record considered as a whole that the crew leaders or department heads were not supervisors, either before or after the "beefing up" procedure adopted by the company for the purpose of giving support to the theory that they possessed supervisory responsibilities. We shall not lengthen this opinion with a detailed description of the functions of the crew leaders or department heads. A reference to the published decision of the Board is sufficient.

We hold on the record before us that whatever authority the crew leaders exercised over other employees, there is substantial evidence supporting the findings of the Board that they did not possess the actual authority effectively to direct others. By this we mean the type of authority which flows from management and tends to associate an individual with management.

■ In enacting § 2(11) of the Act Congress did not intend to exclude from its protection any individuals except those who possess true managerial powers. This section is designed to apply to supervisors with genuine management prerogatives as distinguished from "straw bosses, leadmen, set-up men, and other minor supervisory employees." S. Rep.No.105 on S. 1126, 80th Cong., 1st Sess., p. 4. The company's designation of these employees as "department heads," "assistant foremen" or "foremen" is not controlling in the absence of delegation to them of bona fide managerial powers.

■ The company relies heavily upon the conclusions of the Trial Examiner. It is the Board's findings, not those of the Examiner, which must be reviewed on the basis of their support in the record considered in its entirety. Standard Electric Co. v. N. L. R. B., 5th Cir. 1968, 387 F.2d 717.

Enforcement granted.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.