The **RIVERSIDE PRESS, INC.,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD,** Respondent.

No. 25783.

United States Court of Appeals
Fifth Circuit.

June 17, 1969.

Rehearing Denied and Rehearing En
Banc Denied Sept. 11, 1969.

Fritz L. Lyne, Lyne, Klein & French, Dallas, Tex., for petitioner, The Riverside Press, Inc.

Marcel Mallet-Prevost, Asst. Gen. Counsel, John T. Taylor, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Elliott Moore, Attys., N. L. R. B., for respondent.

Robert H. Nichols, Eugene Cotton, Richard F. Watt, Chicago, Ill., for intervenor. Local 267, Dallas-Fort Worth Lithographers & Photoengravers Intl. Union, AFL-CIO.

Before ALDRICH,* GODBOLD and DYER, Circuit Judges.

ALDRICH, Circuit Judge:

An employer, Riverside Press, Inc., brings this petition to set aside a section 8(a) (5) and (1) order of the National Labor Relations Board based upon an admitted failure to bargain with a

* Of the First Circuit, sitting by designation.

union.[1] The company's position is that the Board certification of the election of the union was improper, an issue on which it could obtain court review only by refusing to bargain and awaiting an unfair labor practice charge. Cf. Boire v. Greyhound Corp., 1964, 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849.[2] At the unfair labor practice stage it sought to try one of the factual issues of the certification de novo, only to find that the Board would not permit it. The propriety of this ruling is the sole question before us.

To begin at the beginning, the union filed a representation petition, after which the regional director conducted the customary pre-election hearing, determined the appropriate unit and ordered an election. The union won by a vote of 26 to 22, but only by virtue of challenging the validity of four ballots, all of which were against the union, claiming the voters to be ineligible supervisors. The company objected to the union's right to challenge, asserting that the supervisory status of all the voters was conclusively "litigated" in the pre-election hearing and could not be relitigated after the election.[3] However, it requested a post-election hearing if the regional director disagreed with its view of the conclusiveness of the pre-election determination. The regional director, after an ex parte investigation, determined that two of the ballots should be counted, and ordered a hearing to determine the status of the others, Wiley and Schilling. This was within his discretion under NLRB Rules and Regulations, 29 C.F.R. § 102.69(c).[4] After an extensive hearing the hearing officer recommended that both ballots remain uncounted. The regional director did not adopt the recommendation as to Wiley, but did as to Schilling, and therefore certified the union. Review by the Board was denied.

When the company refused to recognize it the union filed charges instituting an unfair labor practice proceeding. At these proceedings counsel for the General Counsel rested upon the election and certification of the union and the company's admitted refusal. The company's response was to request a de novo hearing on the supervisory status of Schilling. It did not seek to offer additional evidence, newly discovered or otherwise, cf. NLRB v. Air Control Prods., 5 Cir., 1964, 335 F.2d 245, 251, or try to persuade the trial examiner in effect to review the prior decision to determine if it was legally erroneous or factually unsupported, cf. NLRB v. Southbridge Sheet Metal Works, Inc., 1 Cir., 1967, 380 F.2d 851, 854, & n. 2; Pepsi-Cola Buffalo Bottling Co. v. NLRB, 2 Cir., 1969, 409 F.2d 676. The company's only argument was that before it could be found guilty of an unfair labor practice it was entitled to a complete new hearing upon Schilling's status as of right under section 10(b), 29 U.S.C. § 160 (b). The trial examiner disagreed, and refused to conduct a hearing upon this issue, concluding that it had been fully litigated in the post-election hearing. With no other issues in dispute, the impropriety of the company's refusal to bargain followed as a matter of course. The Board affirmed.

---

1. Local 267, Dallas-Fort Worth Lithographers and Photoengravers International Union, AFL-CIO.

2. The reason for this, of course, as *Boire* pointed out, is to deter delaying action in the courts.

3. If developed, this issue might have raised questions, but it has not been.

4. "[T]he regional director may (1) issue a report on objections or challenged ballots, or both, * * * or (2) exercise his authority to decide the case and issue a decision disposing of the issues and directing appropriate action or certifying the results of the election. In either instance, such action by the regional director may be on the basis of an administrative investigation or, if it appears to the regional director that substantial and material factual issues exist which can be resolved only after a hearing, [he shall issue and cause to be served on the parties a notice of hearing on said issues before a hearing officer."]

■ The company raises, basically, three criticisms of the Board's ruling. The most basic one, that objections to the representation election may not be resolved in post-election hearings, need not detain us. This claim was not only untimely made, see Magnesium Casting Co. v. Hoban, 1 Cir., 1968, 401 F.2d 516, cert. denied 393 U.S. 1065, 89 S.Ct. 720, 21 L.Ed.2d 708 [5] but frivolous in the light of the Board's wide discretion in fulfilling its section 9(c) function of certifying election results. Cf. NLRB v. A. J. Tower Co., 1946, 329 U.S. 324, 67 S.Ct. 324, 91 L.Ed. 322. Such hearings have long been held. It is not necessary that they be specifically provided for in the statute.

■ Secondly, the company argues that even if the Board can hold such hearings, no resolution of any issue in such should be binding in any subsequent unfair labor practice proceeding. Initially it points to the disparity in terms of procedural safeguards between the unfair labor practice hearings and the representational hearings—both pre- and post-election. Whereas in the unfair labor practice hearings a trial examiner presides [6] and the rules of evidence developed in the courts are controlling "so far as practicable," [7] in both representational hearings a hearing officer presides [8] and the judicial rules of evidence are not controlling.[9] In view of the "so far as practicable" language of section 10(b) and the representational nature of the issue involved in the post-election hearing in this case, we shall abide by the long line of cases that have found the representational determinations to be binding in a later unfair labor practice proceeding. See NLRB v. Air Control Prods., 5 Cir., 1964, 335 F. 2d 245; NLRB v. Douglas County Elec. Membership Corp., 5 Cir., 1966, 358 F. 2d 125. There is no reason to distinguish post-election hearings from those held earlier, unless it were contended that the later hearings dealt with issues largely related to conduct which could form the basis for an unfair labor practice charge and only incidental to the question of the proper representation, a distinction we will return to. As the court in Air Control Prods., *supra* 335 F.2d at 251, stated, "We are not dealing with objections to the manner in which the election (or election campaign) is conducted or those in which election activities constitute unfair labor practices." Nor do we accept the company's objection to the Board's rule, 29 C.F.R. § 102.69(d), which in effect denies the applicability to post-election hearings of the prohibition of section 9(c) (1), 29 U.S.C. § 159(c) (1), against the acceptance of hearing officer's recommendations in pre-election proceedings. The restriction in section 9(c) (1) on the powers of hearing officers seems to have been part of a general reform in 1947 to separate prosecutorial and adjudicative functions of the Board. "Presumably, the purpose is to isolate the Board members from the Board agents, who conduct the representation investigations * * *." [10] We are persuaded by the

---

5. The company contends that it was obliged to invoke the rule calling for post-election hearings, even though it disputed its validity, or it would be charged with failure to exhaust its administrative remedies. Cf. NLRB v. Rexall Chem. Co., 1 Cir., 1967, 370 F.2d 363. But if the rule was void, recourse thereto could not be held necessary. It is also too late to contend that the post-election hearings were not exempted by 5 U.S.C. § 554(a) (6) from the safeguards of the Administrative Procedure Act.

6. NLRB Rules and Regulations, 29 C.F.R. § 102.34.

7. National Labor Relations Act § 10(b), 29 U.S.C. § 160(b).

8. NLRB Rules and Regulations, 29 C.F.R. §§ 102.64, 102.69(d).

9. NLRB Rules and Regulations, 29 C.F.R. §§ 102.66, 102.69(d).

10. Senate Minority Report on S.1126, S. Rep. No. 105, pt. 2, 80th Cong., 1st Sess., at 33 (1947), reprinted in U. S. Govt. Printing Office, Legislative History of the Labor Management Relations Act, 1947, at 495 (1948). But if, as Judge Friendly pointed out in Utica Mut. Ins. Co. v. Vin-

Board's contention that while it still formally complies with the section 9(c) (1) restriction in pre-election cases, the addition of section 3(b), 29 U.S.C. § 153(b), in 1959 and the subsequent delegation of the Board's powers in representational proceedings to the regional directors, with a limited discretionary appeal to the Board virtually nullifies the insulating effect of section 9(c) (1), and therefore the Board need not apply a dead letter law to post-election hearings, where it does not literally apply. The regional director is not the neutral adjudicator that Board members are presumed to be, since he partakes in the prosecutorial functions. See McLeod v. Local 239, Inter. Broth. of Teamsters, etc., 2 Cir., 1964, 330 F.2d 108; NLRB Rules and Regulations, 29 C.F.R. §§ 101.5–101.8, 102.14–102.19. Therefore, the majority of representation decisions are made solely by an official not strictly neutral; moreover, when decisions are granted appeal by the Board, they come with the recommendations of this subordinate.[11] Finally, the Board could hardly be prevented from instituting a procedure which is probably fairer, and which, it has been contended, is a requirement of due process under Morgan v. United States, 1936, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288. See Utica Mut. Ins. Co. v. Vincent, 2 Cir., 1967, 375 F.2d 129, cert. denied, 389 U.S. 839, 88 S.Ct. 63 (Friendly, J.) rejecting as frivolous argument that nonrecommendation provision of section 9(c) (1) is unconstitutional, noted in 14 Wayne L.R. 617 (1968).

◼ The company's third major claim is that even if some issues decided in the representational proceedings may be binding in a subsequent unfair labor practice proceeding, the recent cases, Heights Funeral Home, Inc. v. NLRB, 5

Cir., 1967, 385 F.2d 879, and Amalgamated Clothing Workers of America, AFL-CIO v. NLRB, 1966, 124 U.S. App. D.C. 365, 365 F.2d 898, hold that the issue of "supervisory status" of any employee must be relitigated. This is a misconception. These cases allow relitigation only when the subsequent unfair labor practice is "unrelated" to the prior election proceeding; for example, interference with organizational rights by supervisors, or the discharge of an employee allegedly a supervisor. But in *Amalgamated Clothing Workers* the court specifically noted, "Where a company is charged with refusal to bargain with a union certified after election, the proceeding is sufficiently 'related' to the representation proceeding to preclude relitigation of such common issues as the scope of the appropriate unit and *employees therein.*" 365 F.2d at 904. (Emphasis added.) The issue is one of fairness: was the particular point that arises in the unfair labor practice proceeding significant and actually contested at the prior hearing, and was it clearly focused in terms of the issue arising in the later unfair labor practice charge. In the present case the supervisory status of Schilling was the key issue in the post-election hearing, was vigorously contested, and was focused in terms of the validity of the union victory. The overlap, in other words, was precise.

◼ This is not to say that the company could not have raised before us the issue of the adequacy of the evidence to support the regional director's conclusion that Schilling had supervisory status. To return to Boire v. Greyhound, *supra,* it cannot be put in a position where it could never have such a determination. The company, however, though preserving its rights to raise such issues by objecting before the

cent. 2 Cir., 1967, 375 F.2d 129, 133 n. 6, cert. denied, 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 the restriction was only to speed up the pre-election procedure, it is clearly not a requirement in post-election proceedings.

11. The hearing officer, moreover, "may submit an analysis of the record to the regional director or the Board * * *." NLRB Rules and Regulations, 29 C.F.R. § 102.66(f).

NLRB,[12] did not choose to press them before us, either by brief or oral argument. So far as its petition to review and set aside is concerned, this was a waiver.

However, so far as the Board's cross-petition for enforcement is concerned, possibly we should take a cursory look at the adequacy of the Board's findings to support its order, on the assumption that the special statutory basis for the Court's decision in NLRB v. Ochoa Fertilizer Corp., 1961, 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312, is not present here, leaving a burden of sorts upon the Board in spite of the employer's lack of argument. Cf. NLRB v. Local 111, United Broth. of Carpenters, 1 Cir., 1960, 278 F.2d 823, 825; NLRB v. Filtron Co., 2 Cir., 1962, 309 F.2d 184; NLRB v. Kellburn Mfg. Co., 2 Cir., 1945, 149 F.2d 686. But cf. NLRB v. National Mineral Co., 7 Cir., 1943, 134 F.2d 424, 425, cert. denied 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448. Such a look would give us no qualms in enforcing the order. NLRB v. Gary Aircraft Corp., 5 Cir., 1966, 368 F.2d 223, cert. denied 387 U.S. 918, 87 S.Ct. 2032, 18 L.Ed.2d 971; Brewton Fashions, Inc. v. NLRB, 5 Cir., 1966, 361 F.2d 8, cert. denied 385 U.S. 842, 87 S.Ct. 95, 17 L.Ed.2d 75; NLRB v. Swift & Co., 1 Cir., 1961, 292 F.2d 561.

However, this is the most we have to do. The matter was well put in the concurring opinion in NLRB v. Red Spot Elec. Co., 9 Cir., 1951, 191 F.2d 697, at 699.

I approve the judgment of the court as announced in the majority opinion, and agree that upon a petition of this kind we should carefully examine the record for the purpose of determining that the Board had jurisdiction to make its order and that it has not "traveled outside the orbit of its authority". Such procedure is in conformity with the ancient practice of courts of equity when asked to enter a default decree.

With respect to other matters stated or suggested by the opinion, I do not think that the rule of National Labor Relations Board v. Cheney California Lumber Co., 327 U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739, has been modified either by the language of the statute or by anything said in Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456, or in National Labor Relations Board v. Pittsburg SS. Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479. The language of § 10(e) of the Act quoted and relied upon in the Cheney Lumber Company case has not been changed in the later Act.

In a subsequent case the Ninth Circuit cited this concurrence with approval. F.P.C. v. Arizona Edison Co., 9 Cir., 1952, 194 F.2d 679, 685. Clearly the court must be satisfied that the Board had jurisdiction. However, Ochoa Fertilizer Corp., *supra*, itself would seem to have put to rest any concept that the enforcing court, qua court, has a substantive interest in the correctness of the decision underlying the order, or, to quote our Brother Godbold's dissent, "whether in the interest of the national policies represented by the Congressional labor enactments * * * the court should enforce the order." No doubt the court, qua court, owes a duty to itself to ascertain that the form of the order is such that enforcement would be practicable, but beyond that we are not persuaded that a respondent cannot lose a valid point by waiver any less than *Ochoa* held it could by consent.

The order will be enforced.

GODBOLD, Circuit Judge, (dissenting):

I differ with the majority on two grounds. In my opinion they employ an

---

12. We make this concession rather than debate it. Actually, the exceptions which the employer took from the trial examiner's unfair labor practice hearing, as distinguished from those taken from the post-election hearing examiner's hearing, are broad and fail to specify this point.

erroneous standard of review when they take only a "cursory look" at the record as a whole. And, when the record is scrutinized under the appropriate standard of review, it does not support enforcement of the Board order.

I concur with my brothers that, although the employer adequately preserved the supervisory issue during each step of the agency proceedings,[1] it failed to assert that question in brief or oral argument on its petition to review pursuant to § 10(f).[1A] Moreover, I agree with the rejection of the employer's novel procedural attack on post-election hearings.[2]

I. The Standard of Review

This case comes before us under two separate and district statutory provisions. Pursuant to § 10(f),[3] the company petitioned this court to review and set aside the order of the Board. The NLRB filed in one document its answer to the company's § 10(f) petition and its cross-petition to enforce pursuant to § 10(e).[4] Therein it said "that the pro-

---

1. We are not faced with the orthodox bar to judicial review imposed in the absence of "extraordinary circumstances," by § 10(e) to objections not raised before the Board (and hence outside the record on review). See 3 CCH Lab.Law.Rep. ¶ 6015.67; cf. Texaco, Inc. v. NLRB, 5 Cir. 1969, 408 F.2d 142 (intervenor claim not raised before Board rejected).

1A. The petition to set aside alleges that the order is not supported by substantial evidence on the record as a whole. But this assertion is not, without brief or argument, sufficient to present that contention for § 10(f) review.

2. Any other position would conflict with the provisions of 29 C.F.R. § 102.69(c), and with recent decisions of this Court establishing the test for determining when an objecting or challenging party in a representation case has a right to a post-election hearing—where "substantial and material factual issues" are controverted. See NLRB v. Smith Industries, Inc., 5 Cir. 1968, 403 F.2d 889, 892 n. 5, 6. See also Southwestern Portland Cement Co. v. NLRB, 5 Cir. 1969, 407 F.2d 131; NLRB v. Genesco, Inc., 5 Cir. 1969, 406 F.2d 393.

3. 29 U.S.C.A. § 160(f):
"Review of final order of Board on petition to court
"(f) Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business, or in the United States Court of Appeals for the District of Columbia, by filing in such a court a written petition praying that the order of the Board be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court to the Board, and thereupon the aggrieved party shall file in the court the record in the proceeding, certified by the Board, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall proceed in the same manner as in the case of an application by the Board under subsection (e) of this section, and shall have the same jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper, and in like manner to make and enter a decree enforcing, modifying, and enforcing as so modified, or setting aside in whole or in part the order of the Board, the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall in like manner be conclusive."

4. 29 U.S.C.A. § 160(e):
"(e) The Board shall have power to petition any court of appeals of the United States, or if all the courts of appeals to which application may be made are in vacation, any district court of the United States, within any circuit or district, respectively, wherein the unfair labor practice in question occurred or wherein such person resides or transacts business, for the enforcement of such order and for appropriate temporary relief or restraining order, and shall file in the court the record in the proceedings, as provided in section 2112 of Title 28. Upon the filing of such petition, the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to grant such temporary relief or restraining order as. it deems just and proper, and to make and enter a decree enforcing, modifying,

ceedings had before it, the *findings of fact, conclusions of law,* and order of the Board *were and are in all respects valid and proper* under the National Labor Relations Act, as amended * * *," and it asked this court to enforce its order. (Emphasis added). While all members of the panel agree that the employer waived its § 10(f) rights by failing to press the supervisory issue before this court, we differ on the Board's right to enforcement under § 10(e) 'and on the standard which we are required to employ in determining if such a right exists in this case.

In my view the majority standard of a "cursory look" at the record is insufficient. More than that is required for the court to put its judicial imprimatur on the enforcement of a Board order. In reaching that conclusion I consider the express statutory language adopted by Congress after heated debate over the defects of the pre-Taft-Hartley evidentiary standard and the tendency of some appellate courts to rubber stamp Board orders out of deference to administrative expertise, and also the Supreme Court's elaborate indorsement of the purpose of the amended standard in Universal Camera Corp. v. NLRB, 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

There can be no argument over what the statute says. The problem is whether it is, or is not, to be given application in the particular situation before us. *Universal Camera* amply explained the congressional purpose, and I must note several of its observations. That case came about by the intercircuit conflict

in interpretation of the effect of the Taft-Hartley Act Amendments (1947) on the reviewing power of the courts.[5] The Wagner Act had provided that the findings of the Board as to facts, if supported by the evidence, were conclusive. The Supreme Court thereafter had read "evidence" to mean "substantial evidence." [6] The courts had found the Board's burden satisfied under the Wagner standard if the results were supported by substantial evidence viewed in isolation. From the resulting Congressional outrage came the "substantial evidence on the record considered as a whole" test, which ultimately became the Taft-Hartley standard.[7]

Against this background the Supreme Court said that "Congress has left no room for doubt as to the kind of scrutiny which a court of appeals must give the record before the Board to satisfy itself that the Board's order rests on adequate proof." [8]

After carefully examining the legislative history of the Taft-Hartley Amendments, the Supreme Court set out the language so often paraphrased as the *Universal Camera* standard:

> To be sure, the requirement for canvassing "the whole record" in order to ascertain substantiality does not furnish a calculus of value by which a reviewing court can assess the evidence. Nor was it intended to negative the function of the Labor Board as one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the

and enforcing as so modified, or setting aside in whole or in part the order of the Board. No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances. The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive * * *."

5. 340 U.S. at 476 n. 1, 71 S.Ct. 456, 95 L.Ed. at 461 n. 1 and accompanying text.

6. 340 U.S. at 477, 71 S.Ct. 456, 95 L.Ed. 462.

7. 340 U.S. at 477–483, 484 n. 17, 71 S.Ct. 456, 95 L.Ed. at 461–465, 465 n. 17 and accompanying text; 340 U.S. at 485 n. 21, 71 S.Ct. 456, 95 L.Ed. at 466 n. 21.

8. 340 U.S. at 487, 71 S.Ct. at 464, 95 L.Ed. at 467.

authority of an expertness which courts do not possess and therefore must respect. Nor does it mean that even as to matters not requiring expertise a court may displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*. Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision *when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirely furnishes, including the body of evidence opposed to the Board's view.* (Emphasis added)

340 U.S. at 488, 71 S.Ct. at 464, 95 L. Ed. at 467–468. Accord: J. H. Rutter-Rex Mfg. Co. v. NLRB, 5 Cir. 1968, 399 F.2d 356, 359–360, cert. granted 393 U. S. 1116, 89 S.Ct. 991, 22 L.Ed.2d 121 (U.S.Mar. 3, 1969) (No. 925); NLRB v. Brown & Root, Inc., 8 Cir. 1963, 311 F. 2d 447, 451. *See generally* 3 CCH Lab. Law Rep. ¶ 6025 (examining conclusiveness of Board findings under Taft-Hartley (.22) and former Wagner Act tests (.82).

I am of the opinion that Congress, by repeating the same substantiality standard in both § 10(e) and § 10(f), insured that the mutually exclusive enforcement and review provisions [9] would apply the same sufficiency test. The Taft-Hartley Act nowhere intimates any Board right to enforcement except upon satisfaction of the substantiality standard.

The role of the enforcing court in pre-Taft-Hartley days was described by the Second Circuit in NLRB v. Kellburn Mfg. Co., Inc., 2 Cir. 1945, 149 F.2d 686:

As is well understood, an enforcement proceeding is therefore, a combination of an appeal from the order, and a motion to enforce it. In its first aspect, i. e., as an appeal, we think that it rests upon the respondent to show at least that the findings have no substantial support in evidence; and, if so, it follows that when, as here the respondent defaults, it is not necessary to make that examination. We are called upon therefore to go no further than to examine the findings, decide whether they support the order, and whether the order itself is in accordance with the statute.

In a post-Taft-Hartley case [9A] the Seventh Circuit, relying on *Kellburn*, and without consideration of the effect of the 1947 amendments and *Universal Camera*, restated the idea that in an enforcement proceeding the burden is on the respondent to show want of substantial evidence, and that the default of the employer before the enforcing court operates as a confession of the allegations of the enforcement petition, so that all the court then need do is to see if the findings support the order and whether the order complies with the statute, issues on which the Board has the burden of proof.

But power of the court to enforce a Board order is statutory. Once Congress has written into the statute a

9. The review provisions are mutually exclusive not by virtue of the standard of review, but by differing rights of respective parties seeking to invoke the jurisdiction and equitable power of the appellate court. An aggrieved party triggers the review procedure only through § 10(f) with the Board cast in the role of respondent. The Board seeks enforcement under § 10(e) with the aggrieved party, if he has not petitioned under § 10(f), the respondent. Upon the filing of either a § 10(e) or § 10(f) petition, the court is required to apply the same standard of review. Under either section the Board's order must withstand the same standard or it is subject to being modified or set aside in whole or in part.

9A. NLRB v. Wagner Iron Works, 7 Cir. 1955, 220 F.2d 126. See also NLRB v. Flora Construction Company, 10 Cir. 1962, 311 F.2d 310.

standard of review the court cannot give itself power to enforce under a lesser standard, articulated for procedural efficiency and expedition.[10]

The majority rely upon a line of cases predicated upon NLRB v. Cheney Cal. Lumber Co., 1946, 327 U.S. 385, 66 S.Ct. 553, 90 L.Ed. 739. *Cheney* is inapposite. It involved a clear default in the agency proceedings. The employer in *Cheney* simply failed to file exceptions to the Trial Examiner's intermediate report and failed to request oral argument before the Board. 327 U.S. at 386, 66 S.Ct. 553. The Supreme Court merely invoked the orthodox § 10(e) statutory prohibition[11] against judicial examination of an issue not raised before the Board. 327 U.S. at 388–389, 66 S.Ct. 553.[12] The employee *sub judice* has vigorously protested the supervisory issue in all agency proceedings. The §·10(e) prohibition has no application.

In NLRB v. Local 111, United Broth. of Carpenters, 1st Cir. 1960, 278 F.2d 823, 825 Judge Aldrich writing for the First Circuit, set out what seems to me correct:

Any order entered following a decision by the Board is, of course, the court's order, and not that of the Board. In this respect the matter differs from an appeal from a district court. We are correspondingly more concerned with the content of the order. For if, on default, we must automatically enter any order prepared by the Board Congress would in effect be giving to an administrative board the final word in the formulation of our injunctions. We recognize no such power, even if it could be thought that there was such an intent.

278 F.2d at 825. Then he departed from that to say that "full scrutiny need not be accorded a party who has failed to diligently preserve and prosecute his Section 10(f) rights." But the inquiry is whether in the interest of the national policies represented by the Congressional labor enactments, including the 1947 Amendments, the court should enforce the order. The less than full scrutiny standard of *Local 111*, in effect a penalty against a nondiligent employer and a reward to the Board, is simply not allowed by § 10(e).[13] Moreover *Cheney*

10. This court has only recently reiterated the standard for appellate review of representation cases under the NLRA, holding:
   "While a representation proceeding alone would not be subject to direct review by this Court, where an unfair labor practice is charged for refusal to bargain, and the employer has refused to recognize the certification, the election proceeding is properly here. *Under those circumstances, the representation case and the unfair labor practice case become one, and the complete record is fully reviewable.* NLRB v. Tampa Crown Distributors, Inc., 272 F.2d 470 (5 Cir. 1959). See also: NLRB v. Genesco, 406 F.2d 393 (5 Cir. 1969). In order to arrive at a decision in this matter, *we must consider the record to determine* whether the Board's certification of the Union, and consequent finding of an unfair labor practice by petitioner, *were based on facts supported by substantial evidence and on the application of correct legal standards.* Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)."

Electra Mfg. Co. v. NLRB, 5 Cir. 1969, 408 F.2d 570 (Emphasis added).

11. 29 U.S.C. § 160(e) (1964):
   "No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances."
   See NLRB v. Int'l Union of Operating Eng., Local 66, 3 Cir. 1966, 357 F.2d 841, 843–844 and cases cited therein; see generally 3 CCH Lab.Law Rep. ¶ 6015.67.

12. Also *Cheney* antedated both the Taft-Hartley Amendments and *Universal Camera*.

13. Of course, the court can keep its own house in order. It can decline to grant enforcement, for default of the Board in failing to press an enforcement petition. But this does not answer whether the court can grant affirmative relief in favor of the Board without determining if there is evidence to support it.

does not stand for such a rule. NLRB v. Filtron, Inc., 2 Cir. 1962, 309 F.2d 184, 185 is a per curiam adoption of the rationale of *Local 111* and also relies on *Cheney*. NLRB v. Kellburn Mfg. Co., Inc., supra, and NLRB v. National Minerals Co., 7 Cir. 1943, 134 F.2d 424, 425–426, cert. denied 320 U.S. 753, 64 S.Ct. 58, 88 L.Ed. 448, antedate Taft-Hartley and Universal Camera.[14] The presumption of correctness attending the proceedings of administrative agencies cannot dispense with or water down the standard of review specifically established by Congress for enforcement of Board orders.

I would review the Hearing Officer's report[15] under the *Universal Camera* -§ 10(e) test.[16]

## II. The Substantiality of the Evidence

The Hearing Officer, appointed by the Regional Director to conduct the post-election hearing to determine the supervisory status of Schilling and Wiley, adopted as his legal guide to § 2 (11) NLRB v. Beaver Meadow Creamery, Inc., 3 Cir. 1954, 215 F.2d 247, 251. He concluded that *Beaver Meadow Creamery* held that "the term supervisor is to be read disjunctively and that the possession of any one of the Section 2(11) powers will make one a supervisor."

14. I agree with the language of the majority in NLRB v. Red Spot Electric Co., 191 F.2d 697 (9th Cir. 1951) :

   "In any event, it has now been held that the amendments of the Act required a stricter rule of construction than hitherto and that the courts have a much broader sphere of action in determining what orders are to be enforced. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456; National Labor Relations Board v. Pittsburgh Steamship Co., 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479.

   "Therefore, simply because the power of a party in default to take action as of right may have been delimited by Congress, there is no intimation that the power of judicial scrutiny was destroyed when the Board came as suitors praying sanctions upon a report, neither the entry nor the contents of which has been considered by them. As a result, summary enforcement has been denied."

   In *Red Spot*, pursuant to 29 U.S.C.A. § 160(c) and the Board's regulation, 29 C.F.R. § 101.12 and 102.48, the Board automatically adopted the trial examiner's report because the employer did not file exceptions to the report. The court held it would not grant summary enforcement without examining the record. The First Circuit declined to follow *Red Spot* in NLRB v. Auburn Curtain Co., Inc., 1 Cir. 1951, 193 F.2d 826. *Red Spot* was concerned with the *Cheney* problem—the effect of default in the agency proceedings—and the disclaimer of it in *Auburn Curtain* correctly points out that it is inconsistent with *Cheney*. See also NLRB v. Int'l Union of Operating Eng. Local 66, *supra*, 357 F.2d at

846 n. 10. But none of this has to do with the scope of review in a case such as is before us where there has been no default in the agency proceedings and hence no scope of action for the statutory prohibition of § 10(e).

15. The Board effectively rubber-stamped the Hearing Officer's report and its findings as to Schilling's supervisory status when it denied review of the Regional Director's decision adopting the Hearing Officer's decision foreclosing any relief in the § 9 representation proceeding; by adoption without a hearing of its Trial Examiner's decision in the unfair labor practice case, including his invocation of the no-relitigation rule (29 C.F.R. § 102.67(c), the Board effectively foreclosed any relief in the § 10 proceeding.

16. If the majority conclusion, based on *Cheney*, is otherwise correct we still should apply the "extraordinary circumstances" exception to the § 10(e) review prohibition. Cf. NLRB v. Spiewak, 3 Cir. 1950, 179 F.2d 695. In the instant case the § 10 order is wholly conditional upon the validity of the § 9 finding. To enforce the former without careful scrutiny of the latter in accordance with the substantial evidence test may result in a certification and bargaining order being forced by judicial abdication upon less than a majority of the employees whose rights are paramount. See NLRA, Sections 7 and 9(a), 29 U.S.C. §§ 157 and 159(a) (1964). Judicial enforcement was made an integral part of the statutory scheme to assure protection of employee rights guaranteed under the Act, not to insure either employer or union success.

According to the Hearing Officer, (1) Schilling's shift overlapped the other two shifts, (2) he was announced as "foreman" sometime in early Spring by Lunt, *the department supervisor*, (3) he subsequently received a 25 to 75 cent an hour pay raise, although it was expressly found that no discussion ever followed with respect to his duties, responsibilities, or authority, (4) he "gives employees the work, checks the negatives before they make their plates, and looks at the plates after they make them." (5) the order of jobs is given to Schilling by Lunt, whose presence in the department varies from none to 20–30 times a day, (6) Schilling tells men which jobs to do, including occasionally writing instructions for the night shift on a blackboard when Lunt does not do so, (7) he confers with the lithographic department supervisor on approximately 90 percent of the plate quality control problems, and (8) he checked on several occasions time card entries made by department employees and notified them of mistakes made.

On the other hand, the Hearing Officer also made three other important findings, best set out in his own language:

> Lunt, *the admitted supervisor of the department*, is not a plate maker by trade, and has only a general knowledge of the plate making techniques. It appears from the record that Lunt is responsible for the over-all supervision of the department or section, but that internally the method of operation is left up to Schilling who has the technical knowledge necessary for the making of plates. (emphasis added).
> * * *

Testimony reflects that those considered by the Employer to be supervisors are salaried while both Schilling and Wiley are hourly paid as are other hourly employees. Other supervisors are rated on an annual basis, while Schilling and Wiley are rated on a semi-annual basis as are other hourly rated employees. Neither attends regularly scheduled supervisor meetings as do the admitted supervisors.[17]

\* \* \* \* \* \*

It is clear from the record that neither Schilling nor Wiley has the authority to hire, fire, promote, discipline, suspend, lay off, recall, discharge, or reward their employees or to effectively recommend such action.

The Hearing Officer then framed the supervisory issue in a nutshell: "[T]he evidence does reflect that both of them [Schilling and Wiley] assign work and transfer employees from one assignment to another. The question is whether such actions are of a merely routine clerical nature or whether, in the exercise of this authority, they use independent judgment."

The Regional Director disagreed as to Wiley. But he adopted as his own decision the Hearing Officer's determination of Schilling's status, a finding rubber-stamped without review by the Board in both its representation and unfair labor practice capacities.[18]

This court has only recently held that § 2(11), defining under the NLRA who constitutes a "supervisor," is a pragmatic test. In Ross Porta-Plant, Inc. v. NLRB, 5 Cir. 1968, 404 F.2d 1180, 1182, the court noted that the definition re-

---

17. In an elaborate footnote, the Regional Director set out the company's supervisory hierarchy in his Decision and Direction of Election pursuant to § 9(c). (R. 9 n. 2). In fact, he adopted the organizational structure, with the exception of certain inspectors, stipulated by the parties. An *Excelsior* list of employees' names and addresses was also required, thereby clearly showing who should be considered eligible voters when the supervisory personnel are defined. Cf. Groendyke Transport, Inc. v. Davis, 5 Cir. 1969, 406 F.2d 1158, cert. applied for 394 U.S. 1010, 89 S.Ct. 1628, 23 L.Ed. 2d 39; Wyman-Gordon Co. v. NLRB, 1 Cir. 1968, 397 F.2d 394, cert. granted 393 U.S. 932, 89 S.Ct. 301, 21 L.Ed.2d 268.

18. See note 10, supra.

quired "actual authority effectively to direct others." The Court explained:

By this we mean the type of authority which flows from management and tends to associate an individual with management.

In enacting § 2(11) of the Act Congress did not intend to exclude from its protection any individuals except those who possess true managerial powers. This section is designed to apply to supervisors with genuine management prerogatives as distinguished from "straw bosses, leadmen, set-up men, and other minor supervisory employees." S.Rep.No. 105 on S. 1126, 80th Cong., 1st Sess., p. 4. The company's designation of these employees as "department heads," "assistant foremen" or "foremen" is not controlling in the absence of delegation to them of bona fide managerial powers.

404 F.2d at 1182. See NLRB v. American Mfg. Co. of Texas, 5 Cir. 1968, 405 F.2d 473, 474 (per curiam); NLRB v. Security Guard Service, Inc., 5 Cir. 1967, 384 F.2d 143, 149. *See generally* 1 CCH Lab.Law Rep. ¶ 1675.11 and ¶ 1675.147 (duties not title determine supervisory status).

The Hearing Officer's overly restrictive reliance upon *Beaver Meadow Creamery* resulted in his determination that Schilling's functions as the top plate maker and right hand man for Lunt, the non-craftsman supervisor, made Schilling a supervisor, notwithstanding the finding that Schilling lacked all of the indicia of supervisory status possessed by the recognized company hierarchy. Substantial evidence on the record considered as a whole fails to show that Schilling was anything more than a "lead man" or "straw boss". I would deny enforcement.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.