**TEXACO INC., HOUSTON PRODUCING DIVISION, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 25502.**

United States Court of Appeals
Fifth Circuit.

March 3, 1969.

Rehearing and Rehearing En Banc Denied May 9, 1969.

Oliver J. Butler, Jr., Houston, Tex., J. M. Mitchell, New York City, Obediah R. Miller, Houston, Tex., for petitioner.

James P. Wolf, Houston, Tex., Dixie, Wolf & Hall, by Chris Dixie, Houston, Tex., for intervenor, John R. Tadlock, Gen. Counsel, Oil, Chemical and Atomic Workers International Union, Denver, Colo., of counsel.

Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Robert A. Giannasi, Atty., NLRB, Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Michael N. Sohn, Atty., N.L.R.B., for respondent.

Bernard Kleiman, Chicago, Ill., Elliot Bredhoff, Michael Gottesman, George Cohen, Washington, D. C., for United Steelworkers of America, AFL–CIO, amicus curiae.

Before GEWIN and BELL, Circuit Judges, and BOOTLE, District Judge.

GEWIN, Circuit Judge:

This case is before us upon the petition of Texaco Inc., Houston Producing Division, to review a finding by the National Labor Relations Board that Texaco violated sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act, as amended.[1] By cross-petition the Board seeks enforcement of the order issued pursuant to its finding. We deny enforcement.

Texaco employee Gilberto Alaniz was suspended by his foreman on November 5, 1965, after the foreman observed Alaniz leaving the plant with a two-gallon can of kerosene which belonged to the Company. The foreman's action was in compliance with a company policy which required that an employee suspected of theft be immediately suspended with the understanding that he would suffer no loss of pay if subsequent investigation failed to support the suspicion.

Following Alaniz' suspension, the Company's comptroller commenced an investigation of the alleged theft and scheduled an interview with Alaniz on

1. 29 U.S.C. §§ 151 et seq. (1964).

November 17. R. J. Alston, an auditor in that department, was assigned to make the investigation.[2] At the outset of the interview Alaniz requested that a union representative be permitted to attend.[3] This request was denied but Alaniz was advised that he would not be required to continue with the interview if he did not wish to do so. Alaniz, however, chose to proceed, and during the interview confirmed that he had taken the kerosene for his personal use, but denied an accusation by the foreman that he had taken company property on previous occasions.

Alston reported the results of his investigation to the manager of the Houston Producing Division. No disciplinary action was taken or recommended at the interview. After examining the report and consulting with the supervisor of employee relations, the division manager recommended to the general manager of the Domestic Producing Department that a suspension of sixteen and one-half working days would be appropriate discipline. The general manager accepted the recommendation and the suspension was made retroactive to the date Alaniz was relieved of duty by his foreman.

Section 7 of the Act invests employees with the right to bargain collectively through their chosen representatives.[4] Sections 8(a)(1) and 8(a)(5) provide that an employer's refusal to respect this right constitutes an unfair labor practice.[5] "Collective bargaining" is defined by section 8(d) as "the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and *other terms and conditions of employment* * * *."[6] The Board found that the Company violated these provisions of the Act by refusing Alaniz' request for union representation at the interview. This finding was premised upon the Board's view that the Company sought during the interview to deal with Alaniz concerning a term or condition of his employment.

After a careful study of the record, we can find neither basis in fact nor in law for the Board's conclusion that a union representative should have been permitted to be present during the interview.[7] The evidence is overwhelming that the interview was investigatory in nature and there is absolutely no evidence that the comptroller sought to deal with Alaniz about the *consequences* of his alleged misconduct. The function of the interview was to question Alaniz, not to bargain with him.[8]

The Board has properly recognized that an employee's right to union representation does not apply to all dealings with his employer which may eventually or ultimately affect the terms and conditions of his employment.[9] In

2. Alston was in charge of the investigation and apparently conducted it, but District Superintendent Pall and Foreman Witcher were also present at the interview.

3. Alaniz was not a union member. He was, however, part of a unit of employees whose recognized bargaining agent was Local 4–367, Chemical and Atomic Workers International Union.

4. 29 U.S.C. § 157 (1964).

5. 29 U.S.C. § 158(a) (1) & (5) (1964).

6. 29 U.S.C. § 158(d) (1964) (emphasis added).

7. See NLRB v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. NLRB, 340 U.S. 474, 487–88, 71 S.Ct. 456, 95 L.Ed. 456 (1951); NLRB v. Brennan's, Inc., 368 F.2d 1004 (5th Cir.

1966); NLRB v. Brennan's, Inc., 366 F.2d 560, 562 (5th Cir. 1966); NLRB v. Central Okla. Milk Producers Ass'n., 285 F.2d 495, 497 (10th Cir. 1960).

8. It is noted that while the Board concluded that the November 17 interview "was not simply part of an investigation into some alleged theft" and decided that the Company undertook to deal with Alaniz as to matters "affecting his terms and conditions of employment," nevertheless, the Board, elsewhere in its opinion, stated:

The Company controller's office undertook to *investigate* the matter and scheduled a meeting for November 17. [Emphasis added.]

9. See Jacobe-Pearson Ford, Inc., 172 N.L.R.B. No. 84 (1968); Chevron Oil Co., 168 N.L.R.B. No. 84 (1967). Each of these cases was decided by the Board

*Chevron Oil Co.,*[10] the Board held that the exclusion of union representation from an employer-employee interview was not unlawful. There, a foreman had reported that nine employees had walked off the job fifteen minutes early in defiance of his orders. The employer interviewed the employees prior to arriving at a decision on whether disciplinary action was warranted. The Board concluded that such a fact-finding meeting was merely an added effort on the employer's part to hear both sides of the story before reaching a decision, and pointed out that employees should not be shielded by a bargaining agent from company inquiries when management embarks upon an investigation to ascertain whether plant discipline has been breached.[11] Likewise, in *Jacobe-Pearson Ford, Inc.*[12] the Board upheld the denial of requested union representation at a proposed meeting between an employer and his procrastinating employee, finding that the meeting was called merely for the purpose of gathering information.

The result reached in these two cases would appear equally appropriate in the case *sub judice.* The Board's reason for finding otherwise is not entirely clear. It attempts to explain away the inconsistency by pointing out that in neither *Chevron* nor *Jacobe-Ford* had the employer committed himself to disciplinary action at the time of the interview. But as the Company urges in its brief and as it clearly appears from the record, the Company was not committed to disciplinary action. The foreman's suspension of Alaniz was conditional pending the outcome of an investigation and by no means *committed* the Company to a course of action. In any event, if an interview is truly investigatory, we see no reason why an employer's prior commitment to disciplinary action should necessarily transform it into a collective bargaining session requiring union representation.

■ We hold that, since the interview dealt only with eliciting facts and not with the consequences of the facts revealed, its subject matter was not within the scope of compulsory collective bargaining.[13]

■ The Union has filed, as intervenor, a brief in which it urges that by disallowing union representation at the interview, the Company unilaterally altered an established practice of permitting the Union to join with the Company in the investigation of disciplinary matters. It is unnecessary, however, for us to consider the merits of this contention. The complaint issued by General Counsel for the Board did not allege that prior custom and practice required the Company to allow union representation at the interview. To the contrary, the General Counsel explicitly disclaimed that such a theory was within the scope of the complaint. The Trial Examiner states in his decision that the matter was not considered an issue at the hearing before him and was not fully litigated.[14] Furthermore, the Board's decision makes no mention of

---

subsequent to the decision presently under review.

10. 168 N.L.R.B. No. 84 (1967).

11. Chevron Oil Co., 168 N.L.R.B. No. 84 (1967) (Trial Examiner's decision, p. 7, adopted by the Board, p. 1).

12. 172 N.L.R.B. No. 84 (1968).

13. It should be noted that a collective bargaining agreement in force during the relevant period provided that a discharged or suspended employee could file a written grievance with the Company within a specified period after discharge or suspension. However, as the Board stated in its decision:

During the period here involved there was in existence a Company-Union contract containing a grievance procedure. Neither the Union nor Alaniz filed a grievance at any time.

14. In its brief the Board forthrightly states:

We rely on the record evidence dealing with the Company's joint investigatory procedure as background in support of the Board's finding of a violation. However the Board did not rely on the theory, advanced by the Union at the hearing, that the Company unilaterally altered the joint investigatory procedure in violation of the Act. Such a theory was not within the scope of the complaint and was explicitly disclaimed by counsel for the General Counsel. In these circumstances, the

the theory as a basis for its order. Assuming, *arguendo,* that the contention has merit, we are not free to base enforcement of the Board's order upon a matter which was never charged in the complaint, never fully litigated at the hearing, and never considered by the Board, for to do so would not only offend elemental concepts of due process,[15] but would as well abuse the power given us by the Act.[16]

For the reasons herein stated, enforcement of the order is denied.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En banc is denied.

> Board properly declined to consider this additional theory of violation. See. Cutler v. N. L. R. B., 395 F.2d 287, 68 LRRM 2317, 2319 (C.A.2, 1968) and cases there cited.

Moreover, the Trial Examiner made the following determination which was not disturbed by the Board:

> [H]e [General Counsel] agreed with my statement that I correctly understood his position to be that a "departure from a prior practice of a joint investigation is not an element of his allegation of violation of Section 8(a) (5)." Plainly, counsel for the Union is seeking to broaden the scope of the complaint and to include therein an allegation which, though previously urged by counsel for the Union in the appeal from the Regional Director's refusal originally to issue a complaint, was not adopted by the General Counsel in issuing the complaint, at the hearing, or in his response to the Union's posthearing motion. In these circumstances I am persuaded that it

would be an abuse of discretion to grant the Union's motion and thus consider whether the Respondent's action in refusing to allow a union representative to be present at the November 17 investigation amounted to a unilateral change in an established condition of employment and, for that reason, was violative of Section 8(a) (5).

It is clear that General Counsel was acting within the scope of his authority. Wellington Mill Division v. NLRB, 330 F.2d 579, 590 (4th Cir. 1964); Cutler v. NLRB, 395 F.2d 287, 289 (2d Cir. 1968); International Union of Elec. Radio and Machine Workers v. NLRB, 91, 289 F.2d 757, 762 (D.C.Cir. 1960); Piasecki Aircraft Corp. v. NLRB, 280 F.2d 575, 588 (3d Cir. 1960).

15. See Engineers & Fabricators, Inc. v. NLRB, 376 F.2d 482, 485 (5th Cir. 1967).

16. See Wellington Mill Division v. NLRB, 330 F.2d 579, 591 (4th Cir. 1964).