**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**J. WEINGARTEN, INC., Respondent.**

**No. 73–1891**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

Oct. 9, 1973.

Elliott Moore, Acting Asst. Gen. Counsel, N. L. R. B., Washington, D. C., Louis V. Baldwin, Jr., Director, Region 23, N. L. R. B., Houston, Tex., for petitioner.

Neil Martin, Houston, Tex., for respondent.

Before JOHN R. BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

The National Labor Relations Board, pursuant to section 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160 (e), seeks enforcement of its order finding that J. Weingarten, Inc., violated section 8(a)(1) of the NLRA, 29 U.S.C.A. § 158(a)(1), by refusing to allow a union representative to be present at an investigatory interview with an employee. We conclude that, under the facts found by the Administrative Law Judge, there was no legal requirement for a union representative to be present and accord-

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

ingly we.deny enforcement of the Board's order.

## I.

The facts are essentially undisputed. Weingarten operates a series of retail stores and Leura Collins has been employed by the company in its lunch counter or "lobby department" at store # 98. In mid-June 1972, Don Hardy, a loss prevention specialist working for Weingarten, was asked to observe Collins to determine whether reports of her stealing from the store were true. Hardy observed nothing unusual during a day and one-half at the store, but he did learn from Joe York, the manager of store # 98, that another employee, Jewel Moody, had reported a theft by Collins the previous day. When this report was verified with Moody, Hardy and York called Collins to a meeting in the employee's lounge at a time when no one else was present.

At the meeting Collins was confronted with the charges of theft. She denied any wrongdoing and offered an apparently plausible explanation for her actions. She also asked either "Shouldn't the Union be in on this?" or "Could I have Billie [the Union representative] with me?" Whatever the exact question, the response in essence was, "No, this is a private matter." A short time later, Collins' explanation was verified and she was told that the matter was closed.

When told this, Collins became emotional and stated that the only things she had ever taken from Weingarten were her free lunches. This revelation came as a surprise to both York and Hardy who believed that this was directly contrary to store policy. They began questioning Collins again to determine the scope of this practice. Faced with the reopening of the interview, she again requested the presence of the Union steward and was again told that the interview was a private matter. The interview finally ended when Hardy learned that employees at some Weingarten stores did in fact get free lunches and that the policy was unclear at store

# 98. Collins was given the rest of the day off and was told not to discuss the matter with anyone.

## II.

The Board asserts that the interview, in which it found Collins had reason to fear for her job, was a proper place for union representation and argues that the denial of that representation constituted an 8(a)(1) violation. Its position is based on the decisions in Quality Manufacturing Co., 1972, 195 N.L.R.B. No. 42, 79 LRRM 1269, and Mobil Oil Corp., 1972, 196 N.L.R.B. No. 144, 80 LRRM 1188, and is best stated in the following passage from *Mobil*:

An employee's right to union representation upon request is based on Section 7 of the Act which guarantees the right of employees to act in concert for "mutual aid and protection." The denial of his right has a reasonable tendency to interfere with, restrain, and coerce employees in violation of Section 8(a)(1) of the Act. Thus, it is a serious violation of the employee's individual right to engage in concerted activity by seeking the assistance of his statutory representative if the employer denies the employee's request and compels the employee to appear unassisted at an interview which may put his job security in jeopardy. Such a dilution of the employee's right to act collectively to protect his job interests is, in our view, unwarranted interference with his right to insist on concerted protection, rather than individual self-protection, against possible adverse employer action.

Id. at 1191.

The company responds on two fronts. First they argue that Collins did not make sufficiently clear her requests for union representation and that her continuation with the interview after her requests were denied constituted permission for the interview. Secondly, they question the merits of the legal rule advanced by the Board in *Mobil* and *Quality*, and argue that the proper rule was established by this Court in Texaco, Inc.,

Houston Producing Division v. NLRB, 5 Cir. 1969, 408 F.2d 142.

### III.

As a preliminary matter, we conclude from a careful reading of the record that Collins adequately raised the question of union representation and we know of no rule that would require her to halt the interview completely in order to be able to raise before the Board and this Court the question of her right to that representation. Consequently, we face squarely the question decided by the Board in *Mobil* and *Quality*, and reject the rule enunciated there. Our conviction in this regard is strengthened by the recent opinions of the Seventh and Fourth Circuits which denied enforcement of the comparable portions of the Board's orders in *Mobil* and *Quality*. Mobil Oil Corp. v. NLRB, 7 Cir. 1973, 482 F.2d 842; NLRB v. Quality Manufacturing Co., 4 Cir. 1973, 481 F.2d 1018.

Our inquiry into the merits must initially focus on the nature of the confrontation between Collins on the one hand and York and Hardy on the other. There has been no suggestion that the meeting was anything other than a preliminary fact-finding interview. Indeed the Board in its brief before this Court consistently refers to the meeting as an investigative interview. As we said in our *Texaco* decision on related facts, there is no evidence that the company sought to deal with the employee about the consequences of her misconduct: "[t]he function of the interview was to question [the employee], not to bargain with [her]." 408 F.2d at 144.

With the interview thus defined, it is not surprising that the company seeks to rely on a long line of Board decisions, each of which indicates—either directly or indirectly—that no union representative need be present. *See, e. g.,* Illinois Bell Telephone Co., 1971, 192 N.L.R.B. No. 138; Texaco, Inc., Los Angeles Terminal, 1969, 179 N.L.R.B. 976; Wald Manufacturing Co., 1970, 176 N.L.R.B. 839, aff'd, 6 Cir. 1970, 426 F.2d 1328; Dayton Typographic Service, Inc., 1969,

176 N.L.R.B. 357; Jacobe–Pearson Ford, Inc., 1968, 172 N.L.R.B. No. 84; Chevron Oil Co., 1967, 168 N.L.R.B. No. 574; Dobbs Houses, Inc., 1964, 145 N.L.R.B. 1565. *See also* NLRB v. Ross Gear & Tool Co., 7 Cir. 1947, 158 F.2d 607. The Board does not expressly repudiate those decisions, but attempts to distinguish them by finding a violation of Collins' section 7 rights by virtue of the nature of the investigative interview.

In addition to its own precedent, the Board is well aware that it must distinguish the Fifth Circuit *Texaco* case or that decision would be binding precedent upon us, absent en banc reconsideration. In *Texaco*, the Board's order, which found both an 8(a)(1) and an 8(a)(5) violation, was denied enforcement when we found no requirement for union representation at an investigative interview. The Board contends that that case was essentially a "refusal to bargain" case which did not put at issue any other section 7 rights. This contention was considered by the Fourth Circuit in *Quality* and rejected by the following language, which we adopt in full.

Every situation wherein an employee is directed by management to cooperate in an investigatory interview carries the implicit threat of discipline if such direction is not obeyed. And the statement that a particular Section 7 right [the right to act in concert for mutual aid and protection] mentioned in the above quotation had not been previously considered is inaccurate when examined in the context of the case before us. As illustrated by the cases cited in this opinion, the Board has many times been confronted with an alleged violation of Section 8(a)(1) in the context of a denial of union representation at employer-employee interviews. By necessary implication, Section 7 rights have been at issue in each of these cases. Yet never has it been thought, as the Board would hold here, that such rights require an employer to permit an employee to have a union representative present whenever the employee "has reasonable

ground to fear that the interview will adversely affect his continued employment, or even his working conditions."
481 F.2d at 1024 (footnote omitted).

The crux of this case thus hinges on a proper interpretation of section 7 of the NLRB.[1] The Board centers its argument on the language guaranteeing employees the right to act in concert for mutual aid and protection. This right is triggered, it contends, when an employee being interviewed has a reasonable basis for believing that his job is in jeopardy. Thus it concludes that a denial of requested representation at that point constitutes a violation of section 8(a)(1).[2] We disagree.

▇▇▇ While a basic purpose of section 7 is to allow employees to engage in concerted activities for their mutual aid and protection, such a need does not arise at an investigatory interview. To extend the scope of the Act's protection to such preliminary contacts between an employee and his employer would be to apply an overbroad interpretation to section 7. We follow the Seventh Circuit's decision in *Mobil, supra,* but we find it unnecessary at this time to approve or disapprove that part of the opinion (see 482 F.2d 842) which placed great emphasis on the economic pressure function of section 7. We believe that an investigatory interview would be a premature stage at which to invoke a requirement of union representation in the absence of some showing that the purpose of the interview was not merely to elicit facts concerning employee conduct but to impose disciplinary measures upon the employee so that grievance hearings later on would merely put the seal on the employer's prejudgment.

This interpretation of the scope of section 7 is consistent with our decision in *Texaco* and agrees with the conclusions of the Fourth and Seventh Circuits.

Enforcement denied.

---

1. Section 7 of the NLRA, 29 U.S.C.A. § 157, provides:

   Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

2. Section 8(a)(1), 29 U.S.C.A. § 158(a)(1) provides that it shall be an unfair labor practice for an employer, "to interfere with, restrain or coerce employees in the exercise of the rights guaranteed in section 157 of this title [section 7]."