100 Pa. Commonwealth Ct. 50 (1986)
514 A.2d 255
American Federation of State, County and Municipal Employees, Council 13, By Its Trustee Ad Litem, Edward J. Keller, Petitioner
v.
Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent.
No. 167 C.D. 1985.
Commonwealth Court of Pennsylvania.
Argued May 16, 1986.
August 20, 1986.
*51 Argued May 16, 1986, before Judges BARRY and PALLADINO, and Senior Judge ROGERS, sitting as a panel of three.
Robert A. Sloan, with him, Alaine S. Williams and Nancy J. McCauley, Kirschner, Walters, Willig, Weinberg & Dempsey, for petitioner.
James L. Crawford, with him, Patricia J. Goldband, for respondent.
John B. Newrohr, with him, Frank A. Fisher, Jr., Assistant Counsel, and John D. Raup, Chief Counsel, for intervenor, Commonwealth of Pennsylvania.
OPINION BY JUDGE BARRY, August 20, 1986:
This is an appeal by petitioner, American Federation of State, County and Municipal Employees, Council *52 13 (AFSCME),[1] of an order of the Pennsylvania Labor Relations Board (PLRB) dismissing petitioner's complaint that the Commonwealth of Pennsylvania was guilty of unfair labor practices under Sections 1201(a)(1) and (3) of the Public Employee Relations Act, the Act of July 23, 1970, P.L. 563, 43 P.S. §§1101.101-1101.2301, (Act) which read:
(a) Public Employers, their agents or representatives are prohibited from:
(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.
. . . .
(3) Discriminating in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any employe organization.
Id. §§1101.1201(a)(1), (3).
On March 7 and 8, 1984, a district of the Pennsylvania Department of Transportation (DOT), a department of the Commonwealth of Pennsylvania, conducted "desk audits" or investigatory proceedings designed to determine more accurately employee responsibilities as part of a classification review. During this classification review, DOT denied requests made by employees, the steward and local union president as well as AFSCME council representatives, that employees be represented by a bargaining representative during these desk audits. On March 12, 1984, AFSCME, Council 13, filed A Charge of Unfair Labor Practices. On March 14, 1984, the Secretary issued a complaint on AFSCME's charges. On June 28, 1984, a hearing was held before a PLRB hearing examiner who issued a proposed decision *53 and order on August 21, 1984, dismissing the charges against the Commonwealth. In his discussion, the hearing examiner rejected AFSCME's argument that the rule set forth in National Labor Relations Board v. Weingarten, Inc., 420 U.S. 251 (1975), and expanded by the PLRB in Conneaut School District, 10 Pa. Pub. Employee R. ¶ 10092 (Nisi Order, 1979), 12 Pa. Pub. Employee R. ¶ 12155 (Final Order, 1981),[2] applied and found that barring any "legally credible evidence that the classification review at issue here was undertaken as part of a disciplinary procedure to uncover evidence of past misconduct on the part of employes" petitioner's complaint must fail. AFSCME appealed to the PLRB on two grounds: that the hearing examiner misinterpreted and erroneously limited the holdings in Weingarten and Conneaut, and that the Commonwealth engaged in "direct dealing" between employer and individual employees in violation of §1201(a)(5) of the Act. The PLRB dismissed the latter complaint as untimely.[3] It affirmed the hearing examiner's decision and adopted his proposed decision and order in its final order. On appeal, AFSCME argues that the PLRB erred as a matter of law in restricting the U.S. Supreme Court holding in Weingarten and ruling contrary to its own reasoning in Conneaut. Specifically, AFSCME maintains that, although no disciplinary action is involved as was present *54 in Weingarten, the employees' job security,[4] threatened by the classification reviews, is the type of interest which the Weingarten decision was fashioned to protect. AFSCME contends that the Conneaut case and the present case are indistinguishable in that the desk audits of this case and the unsatisfactory performance evaluation given to the teacher in Conneaut involve similar rights requiring equal treatment by the PLRB. AFSCME further claims that the PLRB's dismissal of the "direct dealing" allegation was arbitrary, capricious and an abuse of discretion under 34 Pa. Code §95.98(a)(2).
Under Pennsylvania Social Services Union v. Pennsylvania Labor Relations Board, 68 Pa. Commonwealth Ct. 307, 449 A.2d 96 (1982), our scope of review is limited to determining whether the findings of fact by the PLRB are supported by substantial evidence and whether its conclusions of law are correct and not arbitrary or capricious. In addition, we recognize that "the PLRB, by virtue of its experience and expertise, is better qualified than the courts to address the complexities of disputes of this nature and therefore, the courts should not lightly substitute their judgment for that of the PLRB." Id. at 312, 449 A.2d at 98.
In Weingarten a lunch counter salesperson for a lobby food operation was secretly observed by another company employee responsible for "loss prevention" or shop lifting and employee dishonesty. Following this observation, the salesperson was subjected to intense interrogation regarding these observations. Her requests for the presence of a union shop steward or bargaining representative were denied. Although no disciplinary *55 action resulted from the security inquiry, the union filed an unfair labor practice charge against the employer based on its denial of a union representative to the interviewed employee. The NLRB, reiterating its interpretation of Section 7 of the National Labor Relations Act, codified at 29 U.S.C. §157,[5] in Quality Manufacturing Co., 195 NLRB 197, 79 L.R.R.M. (BNA) 1269 (1972), aff'd, 420 U.S. 276 (1975), and Mobil Oil Corp., 196 NLRB 1052, 80 L.R.R.M. (BNA) 1188 (1972), found that the employer was guilty of violating the interrogated employee's right to "engage in concerted activities for . . . mutual aid or protection," Weingarten, 420 U.S. at 253, but the Court of Appeals for the Fifth Circuit found the Board's construction of Section 7 incorrect and refused to enforce the Board's order which directed the employer to cease and desist from requiring any worker to participate in an interview in which he reasonably fears disciplinary action may result, without union representation. The court concluded that "while a basic purpose of Section 7 is to allow employees to engage in concerted activities for their mutual aid and protection, such a need does not arise at an investigatory interview." National Labor Relations Board v. Weingarten, 485 F.2d 1135, 1138 (5th Cir. 1973). The Supreme Court, however, found that the *56 NLRB had the skill and expertise to evaluate the changing industrial practices in relation to labor management relations. "For the Board has the `special function of applying the general provisions of the Act to the complexities of industrial life,' . . . and its special competence in this field is the justification for the deference accorded its determination." 420 U.S. at 266. It found that the NLRB had systematically, over a period of time, formed and reformed its standards on the basis of "cumulative experience" and that its construction of Section 7 was reasonable and permissible and consistent with the evolutionary process inherent in the PLRB's administrative decision making. It pointed to the Mobil Oil case and Quality Manufacturing case as NLRB decisions which constitute part of the NLRB's painstaking attempts to interpret Section 7 and specifically expressed disdain for the Court of Appeals' disregard of this process:
The responsibility to adapt the Act to changing patterns of industrial life is entrusted to the Board. The Court of Appeals impermissibly encroached upon the Board's function in determining for itself that an employee has no `need' for union assistance at an investigatory interview.. . . It is the province of the Board, not the courts, to determine whether or not the `need' exists in light of changing industrial practices and the Board's cumulative experience in dealing with labor management relations.
Weingarten, 420 U.S. at 265.
In recognition of the U.S. Supreme Court's deference to the NLRB's trial and error administrative decision-making process, we must only look as far as the NLRB's recent decisions to determine at which stage the Weingarten issue is in the "evolutionary process". In Stewart-Warner Corp., 253 NLRB No. 161, 105 L.R.R.M. (BNA) 1678 (1980), and United States Postal *57 Service, 252 NLRB No. 14, 105 L.R.R.M. (BNA) 1200 (1980), the NLRB considered this same issue. In Stewart-Warner, the NLRB found that an employee's efforts to obtain clarification of an employee's duties where no disciplinary action was involved was not an unfair labor practice. In United States Postal Service, the NLRB found that an employer's refusal to permit the presence of a bargaining representative at a physical examination designed to determine the extent to which the employee was, if at all, fit for duty, was not an unfair labor practice. Any doubts about whether the NLRB considered the matter of union representation to apply generally to any administrative action having an effect on an employee's job status or only to investigatory proceedings involving confrontation between employee and employer was laid to rest in United States Postal Service when the NLRB stated:
We agree with the Administrative Law Judge that, on the record in this case, the `fitness for duty' examinations in question were not part of a disciplinary procedure and do not fall within the purview of Weingarten. Thus, while the examinations were prompted by personnel problems such as excessive absenteeism because of alleged illness or injury, and the examinations might lead to recommendations respecting the employees' future work assignments, there is insufficient evidence establishing that the examinations were calculated to form the basis for taking disciplinary or other job-affecting actions against such employees because of past misconduct. Noteworthy also is the absence of evidence that questions of an investigatory nature were in fact asked at these examinations. In addition, these particular medical examinations do not meet with the tests set forth in the Weingarten *58 line of cases, or the rationale underlying these tests which envision a `confrontation' between the employee and his employer.
105 L.R.R.M. (BNA) at 1200 (emphasis added).
In justification of our conclusion here, we note Justice BRENNAN'S summarizing remarks in Weingarten: "In sum, the Board has reached a fair and reasoned balance upon a question within its special competence, its newly arrived at construction of §7 does not exceed the reach of that section, and the Board has adequately explicated the basis of its interpretation." 420 U.S. at 265. In the case before us, both the hearing examiner and the PLRB provide a well reasoned analysis citing both Stewart-Warner and United States Postal Service to support their decision that Section 1201(a)(1) and (3) does not mandate the presence of a bargaining representative upon request at a desk audit.
We now turn to whether the PLRB improperly refused to extend its reasoning in Conneaut to the present case. In Conneaut, the PLRB extended the rule in Weingarten to include "any further meeting or interview beyond the first meeting to discuss a review of public employe's performance evaluation or rating". 12 Pa. Pub. Employees R. §12155 at 242. The performance rating to which the teacher in Conneaut was subjected was given pursuant to Section 1123 of the Public School Code of 1949, the Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1123, which clearly provides for a teacher's dismissal if the rating proves sufficiently unsatisfactory. This is a very limited extension of Weingarten. The PLRB clearly did not intend, by its holding in Conneaut, to generalize the Weingarten rule to any administrative action in which an employer attempted to ascertain his employees' actual job functions for the purposes of reclassification. We reject AFSCME's argument that the rights in question here *59 are or should be deemed equivalent to those protected in Conneaut. Conneaut involves a teacher whose performance evaluation could result in his dismissal  easily identifiable with the classic Weingarten employee. It is obvious from the language of the PLRB's decision in Conneaut that the possibility of disciplinary measures would not necessarily be a prerequisite for Section 1201(a)(1) to come into play; however, it is equally clear that the PLRB did not intend the Weingarten rule to extend beyond individual encounters with his or her employer in which performance was an issue in the discussion and had a specific bearing on that employee's job security. There is no evidence in the record that the case before us involves any more than an attempt by DOT to gather information to more accurately classify jobs and promote efficiency or that the desk audits are in the nature of a confrontation which could result in an employee's dismissal for unsatisfactory performance. The fact that there is a mere possibility of an adverse impact on the employee is not material since the PLRB has not recognized this as a right protected under Section 1201(a)(1) or (3). In following the U.S. Supreme Court in Weingarten and mindful of our scope of review under Pennsylvania Social Services Union, we must defer to the expertise of the PLRB.
Finally, we address AFSCME's contention that the PLRB abused its discretion by not considering AFSCME's charge, raised for the first time in its exceptions to the hearing examiner's proposed decision and order, that the Commonwealth was in violation of Section 1201(a)(5) of the Act. Section 1201(a)(5) reads as follows:
(a) Public employers, their agents or representatives are prohibited from:
. . . .
*60 (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.
43 P.S. §1101.1201(a)(5). AFSCME argues that, under 34 Pa. Code §95.98(a)(2), which reads, "No reference shall be made in the statement of exceptions to any matter not contained in the record of the case", the Board should have considered its claim under Section 1201(a)(5) inasmuch as it is based on evidence already of record. AFSCME, however, inappropriately equates a "reference . . . made in the statement of exceptions" with the raising of a new charge of unfair labor practice. A "direct dealing" charge is a separate and distinct unfair labor practice charge from AFSCME's Section 1201(a)(1) and (3) charges. We read 34 Pa. Code §95.98 as a restrictive provision precluding the filing of exceptions based on factual findings or legal issues which were not considered by the hearing examiner  not as a vehicle for filing new unfair labor practice charges in contravention of 34 Pa. Code §95.31.[6] We note also that AFSCME does not provide, nor does there appear to exist, any reason for not filing such a charge initially under 34 Pa. Code §95.31.
*61 Accordingly, we affirm.

ORDER
NOW, August 20, 1986, we hereby affirm the order of the PLRB dated December 14, 1984, at No. PERA-C-84-142-E, dismissing the exceptions filed by AFSCME to the hearing examiner's proposed decision and order which dismissed AFSCME's unfair labor practice charge against the Commonwealth of Pennsylvania.
(2) The name, address and telephone number of the respondent, or respondents, and any other party named in the charge.
(3) A clear and concise statement of the facts constituting the alleged unfair practice, including the names of the individuals involved in the alleged unfair practice, the time, place of occurrence and nature of each particular act alleged, and reference to the specific provisions of the act alleged to have been violated.
(c) After a charge has been filed, if it appears to the Board that formal proceedings in respect to the charge should be instituted, the Board, or any member of the Board, or the regional director, may issue and cause to be served upon the parties a complaint in the name of the Board, stating the alleged unfair practices, and containing a notice of hearing before a hearing examiner at a place stated in the complaint and at a time not less than five days after the service of the complaint unless involving charges under sections 803 or 1201(b)(6) or (7) of the act (43 P.S. §§1101.803 or 1101.1201(b)(6) or (7)).
Id.
NOTES
[1] This action was brought by Edward J. Keller acting as Trustee Ad Litem.
[2] In Conneaut, a teacher who was given a performance rating subjecting him to disciplinary measures and possible dismissal was denied union representation at the rating meeting. The Board ruled in favor of the teacher, adopting the U.S. Supreme Court's ruling in Weingarten.
[3] Although the PLRB attributed its dismissal to untimeliness, it is clear from its discussion that it found AFSCME to have waived the issue of "direct dealing" by failing to raise it before the hearing examiner.
[4] Both the hearing examiner's proposed decision and order and the Board's discussion in its final order make reference to the fact that the desk audits could result in a classification upward, downward or no change.
[5] Section 7, provides:

The right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.
Id.
[6] §95.31. Charges.

(a) All charges shall be in writing on forms supplied by the Board and shall be signed and sworn to before any person authorized to administer oaths. An original and three copies of the charge shall be filed with the Board by one or more public employes, or any employe organization, acting in their behalf, or by a public employer.
(b) The charge shall include the following information:
(1) The name, address, telephone number and affiliation, if any, of the charging party, and the title of any representative filing the charge.