**COMMONWEALTH of Pennsylvania, Office of Administration, Petitioner**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2003.

Decided March 29, 2004.

Reargument En Banc Denied May 24, 2004.

Keith Herbster, Harrisburg, for petitioner.

Warren A. Mowery, Jr., Harrisburg, for respondent.

Marc L. Gelman, Philadelphia, for intervenor, PA, State Corrections Officers Association.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge PELLEGRINI.[1]

The Commonwealth of Pennsylvania, Office of Administration, appeals from a decision and order of the Pennsylvania Labor Relations Board (Board) concluding that an "investigatory interview" was held with Donald Vogel (Officer Vogel), a Pennsylvania Department of Corrections Officer,[2] at which he was entitled to be represented by the union representative of his choice in accordance with the Public Employe Relations Act (PERA).[3]

On November 13, 2002, Officer Vogel was asked to report to Captain Soroko's office for a counseling session to discuss his record of missing roll calls. Upon arriving at his office but prior to meeting with Captain Soroko, Officer Vogel met with Officer Paul Lennert, who was a member of the local executive board of the Pennsylvania State Corrections Officers Association (PSCOA), the union representing the corrections officers, and they discussed the reason for the meeting. Officer Vogel was aware that Captain Soroko had referred to his record of missing roll calls during a counseling session with another

---

1. This case was reassigned to the author on March 2, 2004.

2. Officer Vogel was employed at the State Correctional Institution–Greensburg.

3. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

corrections officer who had also missed roll calls, Officer Panko, who was also a local union steward. During the counseling session with Captain Soroko, Officer Vogel twice requested that Officer Panko be allowed to represent him during the session, but his requests were denied by Captain Soroko both times. Officer Lennert offered to relieve Officer Panko from his duties, but Captain Soroko insisted that the counseling session continue with Officer Lennert as the union representative. Captain Soroko then stated that Officer Vogel had been late to roll call 15 times and he needed to "straighten up his act." Officer Vogel disputed this allegation, and Captain Soroko informed Officer Vogel that he had records to prove the allegation. Captain Soroko then told Officer Vogel that he would give him his decision later as to whether discipline would be imposed. Ultimately, Officer Vogel did not receive any discipline.

■ Nonetheless, the PSCOA filed a charge of unfair practices with the Board alleging that the Commonwealth violated Sections 1201(a)(1) and (5) of PERA, 43 P.S. §§ 1101.1201(a)(1) and (5),[4] by denying Officer Vogel's requests to be represented by Officer Panko at the counseling session. The Secretary of the Board issued a complaint and notice of hearing, and following hearings, the hearing officer issued a proposed decision and order dismissing the charges after concluding that the Commonwealth did not commit unfair practices within the meaning of Sections 1201(a)(1) and (5) of PERA. PSCOA filed timely exceptions to the proposed decision and order, to which the Board issued a final order reversing that part of the hearing officer's decision that there was no violation of PERA. The Board determined that the counseling session with Officer Vogel was actually an "investigative interview" which entitled him to union representation, and, for the first time, held that an employee had the right under Section 1201(a)(1) of PERA to the union representative of his choice. The Board concluded that the Commonwealth, by failing to provide Officer Vogel with his choice of union representative, had committed an unfair labor practice. This appeal followed.[5]

## I.

The Commonwealth first contends that the counseling session between Officer Vogel and Captain Soroko did not constitute an "investigatory interview" to which the right to union representation attached because the meeting did not involve a question and answer format, and Captain Soroko already had all of the information he needed. Therefore, he was not actually conducting an interview, and the protection set forth in the United State Supreme Court's holding in *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975), did not apply.

**4.** 43 P.S. § 1101.1201(a) provides, in relevant part, the following:

(a) Public employers, their agents or representatives are prohibited from:

(1) Interfering, restraining or coercing employes in the exercise of the rights guaranteed in Article IV of this act.

\* \* \*

(5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of em-

ployes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

**5.** Our scope of review of the Board's order is limited to determining whether constitutional rights were violated, whether an error of law was made, or whether substantial evidence supports the findings of fact. *Pennsylvania State Troopers Association v. Pennsylvania Labor Relations Board*, 804 A.2d 1291 (Pa. Cmwlth.2002).

In *Weingarten,* the United States Supreme Court endorsed the National Labor Relations Board's statutory construction of the federal law guaranteeing the right to union participation in investigatory interviews of employees. It did so because depriving an employee of a union representative at such a hearing would violate Section 157 of the National Labor Relations Act (NLRA), 29 U.S.C. § 157, which guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . ." If an employer did not grant such a request, it was considered to be an unfair labor practice under 29 U.S.C. § 158(1) because it would "interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title."[6] Because Sections 401 and 1201(a)(1) of PERA[7] are almost identical to the aforesaid provision of the NLRA upon which *Weingarten* rights rested, the Board held that *Weingarten* rights should be extended to collective bargaining in Pennsylvania. *See American Federation of State, County and Municipal Employ-*

ees v. *Pennsylvania Labor Relations Board,* 100 Pa.Cmwlth. 50, 514 A.2d 255 (1986).

In order for *Weingarten* rights to attach, the interview must be the basis for the employer taking disciplinary or other job affecting actions based on past misconduct and, an employee, upon request, has the right to the presence of a union representative at an investigative interview only when the employee reasonably believes that the interview may lead to disciplinary action. *Pennsylvania Emergency Management Agency v. Pennsylvania Labor Relations Board,* 768 A.2d 1201 (Pa. Cmwlth.2001).

■ In this case, Officer Vogel testified before the hearing examiner as to what he believed could result from his meeting with Captain Soroko:

Q. And again, when you were ordered to report to this meeting, were you told just what this meeting was?

A. Yes. It was about a predisciplinary conference.

Q. And what is that exactly? Explain that for the Hearing Examiner.

A. Well, I believe it to be maybe an investigative approach to see what they

---

**6.** The United States Supreme Court set forth what has come to be known as the *Weingarten* rule as follows:

First, the right to a union representative's assistance is based on the statutory guarantee that employees may act in concert for mutual aid and protection. Second, the right arises only when the employee requests representation. Third, the right is limited to situations where the employee reasonably believes the investigation will result in disciplinary action. Fourth, the right may not interfere with the employer's legitimate prerogative to continue his investigation without interviewing the employee. Finally, the employer has no duty to bargain in any way with a union representative who may be permitted to attend.

*Weingarten,* 420 U.S. at 256–260, 95 S.Ct. 959.

**7.** Section 401 of PERA, 43 P.S. § 1101.401, provides:

It shall be lawful for public employes to organize, form, join or assist in employe organizations or to engage in lawful concerted activities for the purpose of collective bargaining or other mutual aid and protection or to bargain collectively through representatives of their own free choice and such employes shall also have the right to refrain from any or all such activities, except as may be required pursuant to a maintenance of membership provision in a collective bargaining agreement. *See* ftnt. 4, *supra,* for Section 1201(a)(1) of PERA.

might in the future charge you with or to put on record.

\* \* \*

Q. Okay, thank you. Additionally, isn't it true that what you were called to Captain Soroko's office ___ what the purpose of being called to his office was, was that you were going to attend a formal counseling session; isn't that correct?

A. A formal counseling session, yes, which means a matter of record and yeah, discipline could follow, is my intention ___ my interpretation.

\* \* \*

A. In the second paragraph I see that it says Captain Soroko told me it was a formal counseling session. Well, that's to me, formal counseling means a matter of record. Yes, that was threatening to me.

Q. Okay, and that's what ___ that's how you referred to this meeting in your statement as a formal counseling session; isn't that correct?

A. Yes, and there's another name for it and I know that the meeting had an opportunity to lead to disciplinary action against me. If I didn't call it by its right name, you know that's what I meant.

(Reproduced Record at 22a, 29a–30a.) Not only does the evidence indicate that Officer Vogel focused on the potential disciplinary action to be taken as a result of his meeting with Captain Soroko, but Captain Soroko informed Officer Vogel that he was deferring making a decision as to whether he would take any disciplinary action against him until sometime later, thereby indicating that there was the potential for discipline to be imposed. Because there is sufficient evidence that the counseling session was actually an "investigatory interview" to which Officer Vogel had the right to union representation, the Board's decision was not in error.

## II.

### A.

The Commonwealth also argues that the Board erred in determining that it violated PERA when it denied Officer Vogel's request to be represented by a union representative of his choice. The Board in doing so extended *Weingarten* rights to allow an employee to ask for a specific representative by adopting the National Labor Relations Board (NLRB) policy in *Anheuser–Busch, Inc. and International Brotherhood of Teamsters*, 337 NLRB No. 2, 170 LRRM 1206 (2001), *affirmed, Anheuser–Busch v. National Labor Relations Board*, 338 F.3d 267 (4th Cir.2003), in which the NLRB, in interpreting the NLRA, held that an employee had the right to specify the representative of his choice, and that a *private* employer was obligated to supply that representative absent extenuating circumstances. The only reason given by the Board for adopting this policy was because the NLRB had adopted that policy.

While our Supreme Court has said it is appropriate for the Board to take guidance from NLRB cases interpreting provisions of the NLRA similar to PERA, *Appeal of Cumberland Valley School District*, 483 Pa. 134, 394 A.2d 946 (1978), that does not mean that the Board does not have to make an independent analysis to carry out its duties imposed by the General Assembly in PERA to see that such an interpretation is appropriate. PERA is a much different act than the NLRA and contains many different provisions that make an enormous difference in how the acts should be interpreted. For example, in the area of employee discipline, PERA requires grievance-arbitration while the NLRA does not. Most importantly, the NLRB's interpretation may not apply because

those interpretations involve only private employers and private unions and a relationship that only affects them, not public employers and public unions, whose relationship determines how the public is served and what faith the public has in its government.

### B.

Although this Court is required to give deference to an administrative agency's exercise of discretion within interstices of the power delegated by the General Assembly, *State System of Higher Education v. Pennsylvania Labor Relations Board,* 821 A.2d 156 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 574 Pa. 768, 832 A.2d 437 (2003), we are not required to do so when it acts outside its delegated power. Nothing in PERA gives the Board the power to vest in any particular employee any particular collective bargaining rights because PERA is a collective bargaining statute vesting all rights in a union, and only it and no individual employee has any individual collective bargaining right *vis-à-vis* the employer.[8] Although the Commonwealth has premised its rights on the same sections *Weingarten* did, as can be seen, those sections and those rights have nothing to do with the rights of individual employees, but only the rights of the union. The *Weingarten* rule rests solely on the provisions of PERA that involve collective bargaining rights giving the union the right to be present to protect its interest; however, nothing in *Weingarten* confers any individual rights.

Another illustration that bargaining rights are only exercised by the union is found in Section 606 of PERA that provides:

Representatives selected by public employes in a unit appropriate for collective bargaining purposes shall be the exclusive representative of all the employes in such unit to bargain on wages, hours, terms and conditions of employment: Provided, That any individual employe or a group of employes shall have the right at any time to present grievances to their employer and to have them adjusted without the intervention of the bargaining representative as long as the adjustment is not inconsistent with the terms of a collective bargaining contract then in effect: And, provided further, That the bargaining representative has been given an opportunity to be present at such adjustment.

43 P.S. § 1101.606.

■ While an individual employee may present a grievance to the employer outside the grievance procedure negotiated in the collective bargaining agreement, Section 606 illustrates that the employee's exercise of that right is outside the collective bargaining process and may be adverse to the union interests. Thus, the union retains the right to be present in order to protect the rights of other members of the bargaining unit. "[A]ny rights and remedies possessed by the union and the employer, as parties to the agreement, and by the employee, *as a third-party beneficiary thereof,* ultimately derive primarily from the language of the agreement itself." *Kozura v. Tulpehocken Area School District,* 568 Pa. 64, 71, 791 A.2d 1169, 1174 (2002). (Emphasis added.)

Not only are *Weingarten* rights premised on rights that only the union has in collective bargaining, nothing in PERA

---

8. The only section of PERA remotely discussing representatives is Section 601 of PERA, 43 P.S. § 1101.601, which provides that public employers may select representatives to act in their interest in any collective bargaining with representatives of public employees. However, this section is not relevant for our purposes.

gives the Board this power to vest rights in individual employees. Moreover, requiring an employer and the union to abide by an employee's request for a specific union representative violates an inherent management right to discipline and the right of the union to determine how the collective bargaining agreement is to be administered. Any union rights to contest the discipline exist only if there is a provision in the collective bargaining agreement governing discipline, typically through a "just cause provision." If such a provision applies, then the dispute is resolved through grievance procedures which may end in arbitration. Unlike the NLRA, which does not require grievance-arbitration, Section 903 of PERA mandates:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree.

43 P.S. § 1101.903. Absent a "just cause" provision in the collective bargaining agreement, most government employees would have to challenge discipline through civil service, if available, or not at all. Because discipline is a management prerogative under PERA, under *Weingarten* all that is required is that the union representative be present to protect the union's rights in any future grievance-arbitration. While the union may be able to select the union representative that it wants to be present at the interview, and that request should be honored under *Weingarten* standards, the employer is under no obligation to honor a request from an employee for a specific union representative unless the contract has a provision specifically so providing.[9]

In this case, the contract is between the Commonwealth and the PSCOA, not between the PSCOA and the employees it represents. That means the terms of the collective bargaining agreement, which are determined by the Commonwealth and the PSCOA, dictate. Under Article 35, Section 2, pertaining to Alternative Dispute Resolution Process, Grievance and Arbitration, the contract only provides that the employee has the right to representation, stating:

> Any grievance or dispute which may arise concerning the application, meaning or interpretation of this Agreement except for a dispute arising out of Article 33, Section 22 or a denial of a request for combined leave shall be settled utilizing Steps 1, 2 and 3 below:
>
>    *   *   *
>
> ■ Step 1. *The employee, either alone, or accompanied by the Association Representative, or the Association Representative, where entitled,* shall present the grievance in writing to the respective institutional/boot camp representative or official Agency designee within fifteen (15) days of the date of the occurrence giving rise to the dispute, or when the employee knew or by reasonable diligence should have known of the occurrence. (Emphasis added.)

Nowhere does the agreement state that an employee has the right to dictate which representative will accompany him to any meeting, regardless of whether it is for a counseling session, an investigative interview or a grievance session. Only the union decides who will represent the employee, and the employee is bound by that decision pursuant to the constitution and by-laws of the union. Because the collec-

---

9. *See also Pacific Gas & Electric Company v. National Labor Relations Board,* 253 N.L.R.B. 1143, 106 L.R.R.M. 1077, 1981 WL 21129 (1981).

tive bargaining agreement specifically does not provide the employee with the option of choosing a preferred representative, as a third-party beneficiary to the contract between the Commonwealth and the PSCOA, Officer Vogel did not have this option.

Finally, and most importantly, under PERA, the Board does not have the authority to promulgate such a rule vesting any individual rights because it would not foster orderly collective bargaining between public employee unions and public employers by allowing an employee to decide which union representative will represent him. By vesting the individual employee with the right to tell the union which representative will represent him, we are also taking away from the union the ability to manage its own affairs. While each individual disciplinary action involves an individual employee, ultimately, what is involved is whether it is a right that is held by the union under the collective bargaining agreement, which represents the interests of all employees. Also, if an employee can decide who will represent him and the union representative selected refuses to do so because he/she does not have the time, does not want to become involved in the particular grievance, or because he/she does not believe that he/she can best advocate the employee's position, then there would be additional problems; just to name one, could the discipline process go ahead without any union representation, and would the employee then have a claim for lack of representation against the union?

Because giving a public employee the power to dictate which representative he

wants to represent him is not within the discretion given by the General Assembly to the Board in PERA, and it is at variance with the structural scheme of PERA that only permits collective bargaining, which is its paramount purpose that trumps all other considerations, the Board erred in determining that Officer Vogel had the right to choose the union representative of his choice at the investigatory interview.[10]

Accordingly, that portion of the Board's decision and order is reversed.

### *ORDER*

AND NOW, this *29th* day of *March,* 2004, the order of the Pennsylvania Labor Relations Board dated January 28, 2003, is affirmed in part and reversed in part in accordance with this decision.

DISSENTING OPINION BY Senior Judge McCLOSKEY.

I respectfully dissent. Even if one would agree that the right of representation belongs to the union and not the employee, I must still disagree with the majority opinion. Admittedly, the facts of this case are unique.

These facts establish that, during the course of the counseling session/investigative interview with Captain Sorko, Officer Donald Vogel twice requested that Officer Panko, who was also a local union steward, represent him during the session/interview and replace his initial union representative, Officer Paul Lennert. These facts further establish that Officer Lennert, who was a member of the local executive board of the Pennsylvania State Corrections Officers Association (PSCOA), offered to relieve

---

10. Because we have determined that Officer Vogel was not entitled to choose the union representative of his choice to represent him at the investigatory interview, we need not address the Commonwealth's contention that the Board erred in "shifting the burden of proof to the Commonwealth to show extenuating circumstances justifying the denial of the requested union representative or to otherwise demonstrate the union representative's unavailability." (Commonwealth's brief at 5.)

Officer Panko of his duties so that Officer Panko, who was present at SCI–Greensburg on the day in question and readily available to replace Officer Lennert, could be Officer Vogel's representative. In other words, the union, through Officer Lennert, agreed to let Officer Vogel be represented by a union representative of his choice. However, both of Officer Vogel's requests were denied by Captain Sorko.

In so doing, I believe that Captain Sorko was exercising unfair control over the proceedings. The majority properly concluded that Officer Vogel had the right to union representation at the counseling session/investigative interview with Captain Sorko. However, it was Captain Sorko, a representative of employer, not the union, who was in essence exercising any and all veto power over the choice of union representative. The right to representation, where the adversarial party has the power to choose who will represent the other party, is not a right to representation at all.

Accordingly, I would affirm the decision of the Board, albeit on grounds different from those set forth by the Board.